## BOARD OF COUNTY COMMISSIONERS OF CREEK COUNTY, OKL., et al. v. SEBER et al.

### No. 2488.

Circuit Court of Appeals, Tenth Circuit.

Aug. 22, 1942.

Mac Q. Williamson, Atty. Gen., of State of Oklahoma, and Houston Bus Hill, Asst. Atty. Gen. (Everett S. Collins, Co. Atty., and Kenneth Hughes, Asst. Co. Atty., both of Sapulpa, Okl., on the brief), for appellants.

George H. Jennings, of Sapulpa, Okl., for appellees.

Before PHILLIPS, MURRAH, and WILLIAMS, Circuit Judges.

MURRAH, Circuit Judge.

The appellees, as un-enrolled full-blood Creek Indians, instituted this suit in their own behalf against the duly constituted officials of Creek County, Oklahoma, a municipal corporation, to recover ad

valorem taxes and penalties theretofore paid, plus 6% interest from the date of payment; for cancellation of the assessed and unpaid taxes, and for a judgment declaring the nontaxable status of certain lands located in Creek County, Oklahoma, of which they were the grantees from their mother, Wosey John, now Deere (since deceased), a full-blood enrolled Creek Indian. The lands in question were purchased for and on behalf of Wosey John, now Deere, by the Secretary of the Interior from non-Indian owners[1], out of accumulated trust or restricted funds derived as proceeds from oil and gas produced from the restricted allotment of the said Wosey John, now Deere, pursuant to Section one of the Act of May 27, 1908, 35 Stat. 312.

One parcel of land purchased on December 11, 1915, consisted of property located within the city limits of Sapulpa, Oklahoma; one tract purchased March 24, 1920, consisted of 7½ acres of agricultural land; and another tract purchased December 8, 1927, consisted of 80 acres of agricultural land, all located in Creek County, Oklahoma. Each of the deeds to Wosey John, now Deere, contained a provision restricting the land against alienation or encumbrance unless approved by the Secretary of the Interior, or unless otherwise provided by law.

On March 4, 1931, the said Wosey John, now Deere, in consideration of "$1.00 and love and affection", and with the consent and approval of the Secretary of the Interior, conveyed all of the lands in question to her children and heirs (appellees here), reserving unto herself a life estate in the lands, together with the rents and profits therefrom. The deed of conveyance contained a provision against alienation or encumbrance unless approved by the Secretary of the Interior, with a further provision in the habendum clause as follows: "To have and to hold said described premises, unto said grantees, their heirs and assigns, forever, free, clear and discharged of all * * * taxes, judgments, * * * and other liens and encumbrances of whatsoever nature * * *".

Thereafter and on December 10, 1937, in consideration of "$1.00 and love and affection", the said Wosey John, now Deere, conveyed her life estate, heretofore reserved in all of the land, to the appellees. The conveyance was not approved by the Secretary of the Interior, but the Superintendent of the Five Civilized Tribes certified that the land in question was purchased for the appellees to be held in trust by the United States of America for their benefit by virtue of their being full-blood Creek Indians, not enrolled, and that the deed was executed and approved pursuant to the Act of May 27, 1908, supra. On December 16, 1937, the appellees executed a certificate designating the agricultural lands, consisting of 87½ acres, as their homestead. The said certificate was approved by the Secretary of the Interior on March 24, 1938, and duly filed in the office of the county clerk of Creek County, Oklahoma.

Prior to 1936, all the lands in question, whether held in the name of Wosey John, now Deere, or her children (appellees here), were subject to taxation by the State of Oklahoma and its political subdivisions, McCurdy v. United States, 246 U.S. 263, 38 S.Ct. 289, 62 L.Ed. 706; United States v. Gray, 8 Cir., 284 F. 103; United States v. Ransom, 8 Cir., 284 F. 108, Id., 263 U.S. 691, 44 S.Ct. 230, 68 L.Ed. 508; see, also, Shaw v. Gibson-Zahniser Oil Corporation, 276 U.S. 575, 48 S.Ct. 333, 72 L.Ed. 709, and apparently taxes were levied, assessed and collected on the said lands as unrestricted and nonexempt lands in Oklahoma.

The appellees paid the ad valorem taxes and penalties levied and assessed against all the lands in question for the taxable years 1936 and 1937, and the taxes and penalties levied and assessed against the agricultural land (which had been designated as a homestead on December 16, 1937), for the taxable year 1938, and a part of the taxable years 1939 and 1940. The Creek County officials levied and assessed taxes against all of the property, including the homestead, for the taxable years 1940 and 1941, and assert the power to continue to levy and assess taxes against all of the lands in question, and to collect the taxes by sale as provided by the laws of Oklahoma.

Effective June 20, 1936, Congress passed an Act (Public No. 716, 49 Stat. 1542), "To relieve restricted Indians whose lands have been taxed or have been lost by

---

[1] Although not definitely established, we assume that all of the land involved here formerly belonged to non-Indian owners, and as such was taxable by the State of Oklahoma.

failure to pay taxes, and for other purposes". By Section one of the Act, Congress appropriated $25,000.00 to be expended under rules and regulations prescribed by the Secretary of the Interior for the payment of taxes, penalties, and interest, assessed against individually owned Indian lands, the title to which is held subject to restrictions against alienation or encumbrance, except with the consent or approval of the Secretary of the Interior, and heretofore purchased out of trust or restricted funds of an Indian, where the Secretary finds that such land was purchased with the understanding and belief on the part of said Indian that after purchase it would be nontaxable, and for redemption or reacquisition of any such lands heretofore or hereafter sold for nonpayment of taxes.

Section two of the Act provides, "All lands the title to which is now held by an Indian subject to restrictions against alienation or encumbrance except with the consent or approval of the Secretary of the Interior, heretofore purchased out of trust or restricted funds of said Indian, are hereby declared to be instrumentalities of the Federal Government and shall be nontaxable until otherwise directed by Congress". (See Senate Report No. 2168, 74th Congress, Second Session. House Report No. 2398, 74th Congress, Second Session).

After passage of the Act of June 20, 1936, supra, it was found that the provisions of Section two thereof would apply to lands and other property purchased by restricted Indian funds which would exempt from taxation vast quantities of property, such as business buildings and farm lands which were not homesteads, and would consequently place an unfair burden upon taxable lands included within the taxing jurisdiction. Accordingly, the Commissioner of Indian Affairs appeared before the Senate Committee on Indian Affairs and suggested an amendment to the Act of June 20, 1936, supra. (See Senate Report No. 332, 75th Congress, First Session). Accordingly, the Act of May 19, 1937, Public No. 96, 50 Stat. 188, 25 U.S.C.A. § 412a, amended Section two of the Act of June 20, 1936, supra, to read as follows: *"All homesteads,* heretofore purchased out of the trust or restricted funds of individual Indians, are hereby declared to be instrumentalities of the Federal Government and shall be nontaxable until otherwise directed by Congress:

Provided, That the title to such homesteads shall be held subject to restrictions against alienation or encumbrance except with the approval of the Secretary of the Interior: And provided further, That the Indian owner or owners shall select, with the approval of the Secretary of the Interior, either the agricultural and grazing lands, not exceeding a total of one hundred and sixty acres, or the village, town, or city property, not exceeding in cost $5,000, to be designated as a homestead".

Tax immunity as to all the lands involved is asserted for the years 1936 and 1937 under the provisions of Section two of the Act of June 20, 1936, supra, while immunity is claimed on the designated homestead only for the years 1938, 1939, 1940 and thereafter, under the provisions of the amendatory Act of May 19, 1937, supra. The principal question for decision is whether all the lands are exempt from ad valorem taxation under the Act of June 20, 1936, supra, for the period during which the said Act is applicable; and whether the designated homestead is exempt from taxation under the amendatory Act of May 19, 1937, supra, for the period during which it is applicable. Subsidiary to the principal question is the determination of the taxable period during which the original and the amendatory acts are applicable to the lands involved.

The trial court sustained the contentions of the appellees, gave judgment for the amount of the taxes and penalties paid, plus 6% interest from the date of payment; cancelled the assessed but unpaid taxes and penalties as illegal and void, and perpetually enjoined the taxing authorities (appellants here) from further levy or assessment of ad valorem taxes on the designated homestead. D.C., 38 F.Supp. 731.

■ On appeal, as below, the jurisdiction over the subject matter is challenged for lack of diversity of citizenship, but clearly, the controversy involves the validity, construction, or effect of a law of the United States, upon the determination of which the result depends. The right or immunity asserted here is such that it will be supported if the law is given one construction and effect, and defeated if it receives another. Shulthis v. McDougal, 225 U.S. 561, 32 S.Ct. 704, 56 L. Ed. 1205; Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70. The requisite amount in controversy is present and the court had jurisdiction of the sub-

668

ject matter regardless of diversity of citizenship.

The constitutionality of the acts involved here is also challenged on the grounds that Congress is without power, under the Federal instrumentality doctrine, to create a tax-free instrumentality from otherwise taxable lands by purchase of the same with trust or restricted funds of a restricted Indian, and by prohibiting their alienation without the consent and approval of the Secretary of the Interior.

Undoubtedly the Secretary of the Interior was authorized to purchase the lands in question from the trust or restricted funds of Wosey John, now Deere, and to restrict their alienation or encumbrance without the Secretary's consent and approval. Section one of the Act of May 27, 1908, supra; Sunderland v. United States, 266 U.S. 226, 45 S.Ct. 64, 69 L.Ed. 259; United States v. Law, 8 Cir., 250 F. 218; United States v. Brown, 8 Cir., 8 F. 2d 564; United States v. Goldfeder, 10 Cir., 112 F.2d 615. Likewise the Secretary of the Interior was authorized to approve the conveyance from Wosey John, now Deere, to her full-blood restricted children, subject to the same restrictions, and the said lands retained their restricted character in the grantees. Clinkenbeard v. United States, 10 Cir., 109 F.2d 730, and Act of January 27, 1933, 47 Stat. 777.

Aside from the historically paramount power of Congress to legislate for and on behalf of its Indian wards, United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228; Cherokee Nation v. Hitchcock, 187 U.S. 294, 23 S.Ct. 115, 47 L.Ed. 183; United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532; Tiger v. Western Investment Company, 221 U.S. 286, 31 S.Ct. 578, 55 L.Ed. 738; Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941; United States v. Wright, 4 Cir., 53 F.2d 300, the State of Oklahoma, has by acceptance of statehood under Section one of the Enabling Act (Act of June 16, 1906, 34 Stat. 267), conceded the power and authority of the United States government to make any law or regulation respecting Indians, their lands, property, or other rights by treaties, agreement, law or otherwise. Tiger v. Western Investment Company, supra; Ex parte Webb, 225 U.S. 663, 678, 32 S.Ct. 769, 56 L.Ed. 1248; United States v. Sandoval, 231 U.S. 28, 48, 34 S.Ct. 1, 58

L.Ed. 107. The State of Oklahoma has recognized the paramount jurisdiction of the Federal Government to legislate for and on behalf of its Indian wards with respect to lands located within state boundaries. Gleason v. Wood, 28 Okl. 502, 114 P. 703, 705; McIntosh v. Dill, 86 Okl. 1, 205 P. 917; Wynn v. Fugate, 149 Okl. 210, 299 P. 890; Mashunkashey v. Mashunkashey, Okl.Sup., —— P.2d ——[1] decided September 29, 1942; United States v. Board of Commissioners of Osage County, D.C., 26 F.Supp. 270, 275. By these acts (Acts of June 20, 1936 and May 19, 1937, supra), Congress has assumed a guardianship over the affairs of restricted Indians, with respect to which it has the undubitable power to legislate and by such legislation to protect its guardianship against encroachment or impairment by the state through its taxing powers.

But the restrictions against alienation imposed by the Secretary of the Interior, in virtue of his power and duty to supervise Indians and Indian affairs, do not without more operate to effect an immunity from state taxation. Restrictions against alienation imposed by the Secretary of the Interior do not necessarily create a tax-free government instrumentality. McCurdy v. United States, supra; United States v. Gray, supra; United States v. Ransom, supra; Shaw v. Gibson-Zahniser Oil Corporation, supra; Choteau v. Burnet, 283 U.S. 691, 51 S.Ct. 598, 75 L.Ed. 1353; Superintendent Five Civilized Tribes v. Commissioner, 295 U.S. 418, 55 S.Ct. 820, 79 L.Ed. 1517; Landman v. Commissioner of Internal Revenue, 10 Cir., 123 F.2d 787. Lands allotted to individual Indians in pursuance of a treaty or act of Congress, by the terms of which it is agreed between the United States Government and the tribe, assented to by the state, that the lands thus allotted in severalty shall remain tax-free for a stipulated period, creates a vested property right in the individual allottee which neither the national nor state government may impair or invade. It is a vested property right protected by the constitution, and any attempt to invade or impair will be judged in the light of the treaty obligations of the United States, and especially in the light of the obligation which the United States Government has historically assumed in relation to its intercourse with the Indian tribes. Act of June 28, 1898, 30 Stat. 495, 507;

---

[1] Not released by Court at date of publication.

Act of May 27, 1908, 35 Stat. 312. United States v. Thurston County, 8 Cir., 143 F. 287; United States v. Rickert, supra; Carpenter v. Shaw, 280 U.S. 363, 50 S.Ct. 121, 74 L.Ed. 478; Choate v. Trapp, supra; Ward v. Board of County Com'rs of Love County, 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751; Bryan County v. United States, 10 Cir., 123 F.2d 782.

■ But unlike lands allotted in severalty to members of the Five Civilized Tribes, under an agreement or treaty, providing for immunity from taxation until removed by the terms of the agreement or treaty, tax immunity here depends upon the express will of Congress, and must be found within the plain terms of the legislation relied upon to effect the exemption. Shaw v. Gibson-Zahniser Oil Corporation, supra. By the Act of June 20, 1936, as amended by the Act of May 19, 1937, supra, Congress has plainly expressed a purpose to protect lands purchased with trust or restricted funds of a restricted Indian so long as the said lands are restricted from alienation without the approval of the Secretary of the Interior, and to effect that purpose, Congress has declared such lands to be instrumentalities of the Federal Government and exempt from taxation until otherwise directed by Congress. The history of the legislation, as well as the text of the acts, indicates quite clearly a Congressional purpose to fulfill its obligation to this particular class of Indians arising out of an erroneous assumption that the restricted character of the lands in question operated to create a tax-free instrumentality by necessary implication. See McCurdy v. United States, supra; Shaw v. Gibson-Zahniser Oil Corporation, supra; United States v. Ransom, supra; United States v. Gray, supra; Landman v. Commissioner of Internal Revenue, supra; Superintendent Five Civilized Tribes v. Commissioner, supra.

But the appellants contend that in order to come within the scope of Section two of the Act of June 20, 1936, supra, the lands must have been "heretofore purchased out of trust or restricted funds of said Indian", and that since March 4, 1931, and particularly for the taxable years 1936 and 1937, the lands sought to be taxed were held not by the restricted Indian whose trust or restricted funds purchase the land, but by the grantees of the said Indian as a gift; that none of the lands was purchased by the restricted funds of the appellees, hence they do not come within the purview of the Act declaring a government instrumentality.

■ It is true that no trust or restricted funds of the appellees were invested in the lands in question. The appellees held the same as a gift from their mother, whose trust or restricted funds were used to purchase same, and it may be admitted that when considered by its technical language, without regard to its natural meaning or purpose, and without relation to the amendment (May 19, 1937), there is cause for doubt concerning the application of the original act to lands, the title to which has passed from the Indian whose trust or restricted funds purchased the same. But when, on March 4, 1931, Wosey John, now Deere, conveyed the lands to the appellees, she, by express language in the deed of conveyance, retained unto herself a life estate, together with the improvements thereon and the rents and profits therefrom. She warranted the title against judgments, taxes, liens, and encumbrances of whatsoever nature. As such life tenant, she held the dominant and taxable estate, and it was her statutory duty to pay all lawful taxes levied against the land so long as she retained the life estate. Revised Laws of Oklahoma of 1910 § 6644, 60 O.S.A. § 69; Helm v. Belvin, 107 Okl. 214, 232 P. 382; Riley v. Collier, 111 Okl. 130, 238 P. 491; Waldon v. Baker, 184 Okl 492, 88 P.2d 352; Tiffany on Real Property, Vol. 1, § 63; Rothschild v. Weinthel, 191 Ind. 85, 131 N.E. 917, 132 N.E. 687, 17 A.I.. R. 1384; Thayer v. Shorey, 287 Mass. 76, 191 N.E. 435, 94 A.L.R. 311.

■ It follows that she is entitled to the tax immunity granted by the Act whilst she owned the dominant estate, and the appellees, as vested remaindermen, are entitled to the benefits of the tax immunity which attached to the land while Wosey John, now Deere, held the life estate therein. Since Wosey John, now Deere, retained the life estate until December 10, 1937, and until after the effective date of the amendatory Act of May 19, 1937, all the lands in question were immune from taxation for the period during which the original Act is applicable as "lands * * * heretofore purchased out of trust or restricted funds of said Indian". When, on December 10, 1937, Wosey John, now Deere, conveyed her life estate in the lands to the appellees, and the appellees became

obligated to pay all lawful taxes assessed against the land, the Congress had previously and on May 19, 1937, eliminated the ambiguity provoking language contained in the original act by declaring that all homesteads heretofore purchased with trust or restricted funds of an *individual Indian*, restricted against alienation without the approval of the Secretary of the Interior, were instrumentalities of the Federal Government and exempt from all taxes, provided the homestead was selected in accordance with the amendment. Consequently, the homestead, when designated, is embraced within the amendatory Act of May 19, 1937, and is exempt from taxation for the period during which it is applicable. The agricultural lands were selected and designated as a homestead by the appellees on December 16, 1937, six days after acquisition of title thereto on December 10, 1937. The designation was not formally approved by the Secretary of the Interior until March 4, 1938, but we think the formal approval by the Secretary related back to the date of the designation.

The taxable year in Oklahoma is the fiscal year and begins July first and not January first. Real estate is assessable in the name of the owner thereof on January first of any year, and the taxes thus assessed are levied as of July first of the same year, which is the beginning of the current, fiscal, and taxable year. In re Texas Company's Assessment, 168 Okl. 94, 31 P.2d 929. Real estate assessable in the name of the owner on January first of any year does not change its taxable status or become exempt from taxation for the ensuing taxable year beginning July first, because it acquired a nontaxable character between the date of the assessment on January first and the date of the levy on the following July first. Board of Commissioners of Comanche County v. Central Baptist Church, 136 Okl. 99, 276 P. 726, 63 A.L.R. 1327, as corrected In re Texas Company's Assessment, supra, 31 P.2d page 931. The taxable status of all property in Oklahoma is fixed as of January first of each year for the ensuing taxable year beginning July first, and its status as fixed on that date is not changed by intervening circumstances affecting its taxability between the date of the assessment and the levy date. In re Assessment of Champlin Refining Company, 186 Okl. 625, 99 P.2d 880. It follows that property not assessable as of January first of any year,

because exempt from taxation, is nontaxable for the following fiscal and taxable year beginning July first, although it may have become subject to taxation between the assessment date on January first and the levy date on the following July first. In re Sinclair Prairie Oil Company, 175 Okl. 289, 53 P.2d 221, 229. See, also, In re Assessment of Champlin Refining Company, supra.

The exemption granted here is based upon the power of the Federal Government to create a Federal instrumentality out of lands heretofore taxable by the State of Oklahoma, and to immunize them against state taxation. But there is nothing in the acts here involved indicating an intention or purpose to disrupt the orderly procedure by which the State of Oklahoma pursues its statutory scheme of taxation, so long as such procedure does not circumvent or proscribe the declared purpose of the national enactment. We see no reason here to depart from the orderly procedure as outlined by the state law in the determination of the period in which the respective exempting acts have application to the lands embraced within the compass of the Acts. The right to be vindicated is a Federal right, but state laws have a distinct relevancy and they are entitled to a respectful consideration. Their observance here will result in a synchronization of state and Federal law and give vitality to both, while to ignore them would result in doubt and confusion. Board of Commissioners of Jackson County v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313; Cf. United States v. Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327.

When measured by this rule, all of the lands in question were subject to taxation and therefore assessable on January 1, 1936, on which date the taxable status was fixed; they were therefore subject to taxation on the levy date which was July 1, 1936 for the ensuing taxable year ending June 30, 1937, although declared exempt from state taxation on June 20, 1936.

By the same rule, all of the lands in question, having been declared exempt from taxation on June 20, 1936, were not subject to taxation by the state, therefore nonassessable on January 1, 1937, for the ensuing fiscal and taxable year beginning July 1, 1937. The lands were therefore exempt from taxation for the taxable year

beginning July 1, 1937. In re Sinclair Prairie Oil Company, supra; In re Assessment of Champlin Refining Company, supra.

On January 1, 1938, all of the lands, except the designated homestead, were assessable for taxation because nonexempt under the amendatory Act of May 19, 1937, and the homestead having been selected in accordance with the amendment by the appellees on December 16, 1937, was exempt from taxation for the taxable year beginning July 1, 1938, and thereafter, so long as restricted against alienation without the approval of the Secretary of the Interior or until otherwise directed by Congress.

It is also contended that since the appellees did not pursue the statutory remedy provided by Section 12665, O.S.1931, 68 O.S.A. §§ 263—15.49 and 15.50), which remedy is exclusive, they may not by these proceedings recover the taxes paid without protest. But it is true, as the appellants concede, that the appellees were put to the choice of either paying the taxes assessed and levied against the property, or having the lands sold to satisfy the same as provided by the laws of Oklahoma. The taxes were therefore not paid voluntarily, but under compulsion and duress. Ward v. Board of County Com'rs of Love County, supra, 253 U.S. page 24, 40 S.Ct. 419, 64 L.Ed. 751; Carpenter v. Shaw, supra, 280 U.S. page 369, 50 S.Ct. 121, 74 L.Ed. 478. "This exemption is not subject to violation by the state tax laws or administrative officials, directly or indirectly. So far as the state taxing power is concerned, the exempt lands do not exist", and to the extent herein observed, "The land is as effectively without the pale of the tax laws and their administration as if they were located in another state. All proceedings of the taxing power, having as their effect a violation of this exemption, are without jurisdiction and void, * * *". Hutchison v. Brown, 66 Okl. 250, 167 P. 624, 628. See, also, Johnson v. Jackson, 156 Okl. 148, 9 P.2d 950.

The above authorities relate to a tax deed covering tax exempt lands, but we think the principle has application here. It follows that the right to recover taxes, illegal and void because beyond the jurisdiction of the taxing authorities, cannot be made to depend upon any procedural requirements of the State of Oklahoma, the effect of which would deny a vested right of immunity granted by a law of the United States. Carpenter v. Shaw, supra. See, also, Board of Commissioners of Jackson County v. United States, supra.

The contention with reference to the statute of limitations need not be noticed since we hold that all of the lands involved here were not exempt from taxation for the taxable year beginning July 1, 1936 and ending June 30, 1937, hence the taxes levied, assessed, and paid for this period, together with the penalties, were lawful and not recoverable. All other taxes assessed and paid, and held to be illegal and void, are concededly within the statute of limitations.

We conclude that the trial court erroneously granted a recovery for the taxes and penalties for the taxable year beginning July 1, 1936; furthermore the allowance of interest on the taxes paid, held to be illegal and void, is disallowed under the authority of Board of Commissioners of Jackson County v. United States, supra; Bryan County v. United States, supra.

As modified, the judgment is affirmed.

WILLIAMS, Circuit Judge (dissenting).

This appeal involves a judgment in favor of plaintiffs below (appellees herein), to-wit, Evelyn Seber, otherwise designated as Osharsha John, Jimmie Powshiek, and Juanita Deere, now McIntosh, children of Wosey John, afterward Deere, now deceased, against defendants below (appellants herein), to-wit, Board of County Commissioners of Creek County, and its treasurer and assessor and clerk, for taxes paid on December 15, 1936, levied for said year on lots located in Block 39, original townsite of Sapulpa, Creek County, Oklahoma, $829.61, and for year 1936 on 80 acres allotted in Section 27, $848.80, total amount paid, $1678.41, with refund on May 12, 1937 of $121.08, net amount paid on said December 15, 1936 of $1557.33, and for ad valorem taxes paid on November 14, 1939 levied as follows: for year 1936 on 7½ acres allotted land in Section 36, including penalties, $171.08, for year 1937 on said 7½ acres in Section 36, with penalties included, $136.87, for year 1937 on said Lots in Block 39, City of Sapulpa, including penalties, $917.04, for year 1937 on said 80 acres in Section 27, including penalties, $993.97, for year 1938 on said 7½ acres in Section 36, including penalties, $164.04, for year 1938 on said 80 acres

in Section 27, including penalties, $799.67, total taxes for 1938 in Section 27, including penalties, $143.80, total taxes, etc., paid November 14, 1939, $3608.51. Ad valorem taxes paid on January 8, 1941: Two-thirds of taxes levied for year 1939 on said 7½ acres in Section 36, including penalties, $117.76, two-thirds of taxes levied for year 1939 on said 80 acres in Section 27, including penalties, $663.24, two-thirds of taxes levied for year 1940 on said 7½ acres in Section 36, including penalties, $92.76, total taxes paid on January 8, 1941, $873.76.

Said lots are described as follows:
Center 50 feet of Lot 6, and the center 50 feet of the South 33.41 feet of Lot 3 in Block 39, in the City of Sapulpa (original townsite) Creek County (in the Creek Nation)
Said 80 acres in Section 27 as follows:
W½SW¼, Section 27, Township 18 North, Range 11 East, Creek County, Oklahoma
Said 7½ acres in Section 36 as follows:
W½NW¼SW¼SW¼ and W½E½ NW¼SW¼SW¼, Section 36, Township 18 North, Range 11 East, Creek County, Oklahoma

Interest was awarded at the rate of 6% per annum from December 15, 1936, date said taxes were paid, and likewise from November 14, 1939, and January 8, 1941, at same rate of interest. Taxes not paid were adjudged to be void and of no effect, and permanent injunction awarded against collection.

The United States of America is in no way, manner, or capacity or any agency a party to this action either in the trial or appellate court, the action having been instituted and prosecuted in the individual capacity of the said plaintiffs by private attorney and counsel, without any direction in any way by the United States.

Appellants urge that the trial court (1) was without jurisdiction, no diversity of citizenship, (2) and no federal question involved, (3) that state procedure provided remedy for recovery or refund of such taxes where illegally paid, (4) same could have been paid under protest and suit brought within time as permitted by state statute, or (5) by filing affidavit for correction as to erroneous assessment with the Board of Equalization, and (6) action could have been instituted within three years before bar of statute of limitations fell, none of which was done, and (7) not

entitled to relief under Act of Congress of June 20, 1936, 49 Stat. 1542, as amended by Act of Congress of May 19, 1937, 50 Stat. 188, 25 U.S.C.A. § 412a.

Wosey John, now Deere, a full-blood member of the Muskogee (Creek) tribe of Indians, approved tribal membership (Roll No. 9546), mother of the appellees herein, deceased at time this action was tried and until date of her death the Secretary of the Interior had in his custody restricted funds belonging to her derived from restricted oil and gas royalties on her restricted allotted lands which were used for and by her through the approval and action by the Secretary of the Interior between the dates of December 11, 1915, and November 8, 1927, inclusive, to purchase parcels of land as above described, the said purchased parcels, excepting said town lots, having become unrestricted after allotment, was purchased when unrestricted with such restricted funds, and said town lots so purchased from owners thereof, a part of the original Sapulpa townsite in the Creek Nation, and which had been segregated, surveyed, bounded, laid out, platted, approved and sold and conveyed by deed or patent under supervision of the United States Government for the Creek tribe in fee without any reserved restrictions whatever thereon, by valid federal act said original townsite being reserved from the Creek tribal lands, the boundaries surveyed, including blocks, lots, alleys, streets, etc., platted, appraised, sold and conveyed under the townsite provisions contained in Act of Congress of June 28, 1898, 30 Stat. 495, and Creek Supp.Treaty, June 30, 1902, 32 Stat. 500, and Original Creek Treaty, Act of March 1, 1901, 31 Stat. 861, Sections 2 and 3, and Act of Congress, 30 Stat. 495, Section 30, and Sections 1, 2, 3, 11, 12, 14, Tentative Creek Treaty, September 27, 1897, contained in said Act of June 28, 1898, said lots, after due issuance and recording of deed or patent, being free of all restrictions whatever, and thereafter the laws of the United States Government applied exclusively to and over said townsite, and after erection of the state of Oklahoma on November 16, 1907, state laws applied.

The Secretary of the Interior, so far as the record discloses, neither had in his possession nor in the control or custody of his department until after death of mother September 2, 1938, any restricted funds of either one of these appellees—full blood

Creeks born after March 4, 1906—in no way on the approved Creek roll as members of the tribe so as to be entitled to participate in allotments in Creek tribal lands or the distribution of tribal funds, and any participation on their part could be merely as heirs mediately or otherwise and the only right to participate under the deeds from their mother was purely as a gift and as to whether the gift in the deed carried with it the right as to continuance of restrictions in their favor would depend on whether there was an understanding or agreement on her part when the purchase on her part and conveyance was originally made to her that as to the amount of consideration for each of the three deeds to her from the original three grantors that her funds held by the Secretary of the Interior as part of her restricted royalties in such amount should be so transferred on his records for their benefit as to vest in them (appellees) and by the Secretary of the Interior then and there applied for such consideration, and that then she should hold in trust the title to said three parcels of realty for them to be later by her conveyed to them.[1] There is no such proof in the record and the burden rests on appellees. She neither acquired these parcels of land as her technical Creek homestead as she had such original homestead allotted to her under Creek Treaty, nor as restricted in trust for appellees on December 11, 1915, March 24, 1920, and on December 8, 1927, as the original allotted lands had become oil producing, and with her restricted oil royalty funds the said W½ SW¼, Section 27, Twp. 18N, Range 11E, I. B. & M. (80 acres) was purchased for a home for her, and afterwards, on March 4, 1931, she executed deed (*Exhibit* D) with warranty conveying *jointly* to her three non-enrolled full blood children, born after March 4, 1906, with the clause contained therein prohibiting them in effect from alienating the same without consent

and the approval of the Secretary of the Interior, and reserving all rents and proceeds in connection with a life estate therein which she retained in said conveyance, and on May 19, 1937 for a recited consideration of "$1.00 and love and affection," a pure gift, she conveyed to appellees *jointly* said life estate, no restricted funds on their joint part being any part of a consideration therefor. Said deed to Wosey John Deere attached as Exhibit A to complaint, date of December 11, 1915, contained the following clause:

"Subject to the condition that no lease, deed, mortgage, power of attorney, contract to sell or other instrument affecting the land herein described or the title thereto, executed during the lifetime of said grantee at any time prior to April 26, 1931, shall be of any force and effect or capable of confirmation or ratification, unless made with the consent or approved by the Secretary of the Interior."

Certificate of the Acting Superintendent of the Five Civilized Tribes (Secretary of Interior not otherwise approving same),[2] appears as of December 11, 1915, date on which said deed was executed and attached thereto, in which it is stated:

"I hereby certify that the land described in the above deed was purchased for the said Wosey John with funds Held in Trust by the United States *for her benefit from funds derived from oil royalties for resricted land, inherited by the said Wosey John,* by virtue of her enrollment as a full-blood citizen of the Creek Nation, opposite No. 9546 on the final approved rolls of citizens by blood of that Nation, and that said purchase was made and said deed was executed, and *the same is hereby approved* pursuant to the Regulations prescribed by the Secretary of the Interior under the Act of Congress approved May 27, 1908, and the Act approved August 1, 1914." (Emphasis supplied.) (So as such enrolled full blood

---

[1] Clinkenbeard v. United States, 10 Cir., 109 F.2d 730.

[2] "If Congress, in fulfillment of its duty to protect the Indians, whose welfare is the peculiar concern of the federal government, deems it proper to restrict for a *limited* time the right of the individual Indian to alienate land purchased for him with funds arising from the sale of other [allotted] lands originally subject to a like restriction, we are not aware of anything which stands in the way. The state of Oklahoma is not concerned, since there is no state statute, rule of law or

policy, which has been called to our attention, to the contrary effect. If there were, or if the power of state taxation were involved, we should consider the *question of supremacy of power;* but no such question is presented by this record." (Emphasis supplied) Sunderland v. United States, 266 U.S. 226, 45 S.Ct. 64, 65, 69 L.Ed. 259; United States v. Ransom, 263 U.S. 691, 44 S.Ct. 230, 68 L.Ed. 508; Shaw v. Gibson-Zahniser Oil Corp., 276 U.S. 575, 48 S.Ct. 333, 72 L. Ed. 709; United States v. Gray, 10 Cir., 284 F. 103.

she held restricted inherited allotted land in addition to her allotment.)

Said deed covered said Lots 3 and 6 in Block 39, original townsite of Sapulpa, with a warranty from the grantor, as herein described.

The second deed (Exhibit B), dated March 24, 1920, covered W½ NW¼ SW¼ SW¼ and W½ E½ NW¼ SW¼ SW¼, Section 36, Township 18 North, Range 11 East, containing 7½ acres, with a warranty by the grantor, and containing the same clause as to restrictions as in said Exhibit A (deed), and attached thereto is a statement of the Superintendent for the Five Civilized Tribes, but no approval otherwise by Secretary of Interior, as follows:

"I hereby certify that the land described in the above deed was purchased for the said Wosey Powesheik, nee John, with funds Held in Trust by the United States for her benefit derived *from oil royalties from restricted land allotted* to said Wosey Powesheik, nee John, by virtue of her enrollment as a full-blood citizen of the Creek Nation, opposite No. 9546 on the final approved rolls of the citizens by blood of that Nation, and that said purchase was made and said deed was executed, and the same is hereby approved pursuant to the regulations prescribed by the Secretary of the Interior under the Act of Congress approved May 27, 1908, and the Act approved August 1, 1914." (Emphasis supplied.) (So she had restricted oil royalties from her allotment.)

On November 8, 1927, Exhibit C, deed dated November 8, 1927, was executed to Wosey John Deere by American National Bank, covering W½ SW¼ of Section 27, Township 18 North, Range 11 East, containing substantially same clause as to restrictions, etc. as contained in said Exhibits A and B and the attached certificate of Acting District Superintendent for the Five Civilized Tribes, and not otherwise joined in by Secretary of the Interior.

The deed (Exhibit D) to appellees, executed on March 4, 1931, recites consideration of "$1.00 and love and affection" and that Wosey John, now Deere, "does hereby grant, bargain, sell and convey unto Osharsha John, now Evalin Seber, Jimmie Powesheik and Juanita Deere, the legal issue of their bodies *· * *: W½ SW¼, Section 27, Township 18 North, Range 11 East, and W½ NW¼ SW¼ SW¼ and W½ E½ NW¼ SW¼ SW¼, Section 36, Township 18 North, Range 11 East, and

also Center Fifty feet of Lot 6, and Center Fifty feet of South 33.4 feet of Lot 3, all in Block 39, of the original townsite of Sapulpa," the grantor retaining all the rents and profits to be derived from all the above property, so long as she lives, that is, the grantor retains a life estate in all of the real estate described in this deed, together with all the improvements thereon, and the appurtenances thereunto belonging and warrant the title to the same· * * * subject to the condition that no lease, deed, mortgage, power of attorney, contract to sell, or other instrument affecting the land herein described or the title thereto shall be of any force and effect or capable of confirmation or ratification, unless made with the consent or approved by the Secretary of the Interior. And without more, at bottom of said deed was the following: "Department of the Interior, Office of Secretary, Washington, D. C., April 3, 1931: The within deed is hereby approved. (signed) Jos. M. Dixon, First Assistant Secretary."

On December 10, 1937, in written instrument executed by her it is recited that said Wosey John Deere "in consideration of the sum of $1.00 and love and affection * * * does hereby grant, sell, and convey unto Osharsha John, now Evalin Seber, Jimmie Powesheik and Juanita Deere, and the legal issue of their bodies * * *: All of the life estate theretofore reserved in said described property, as shown by the Warranty Deed executed on March 4, 1931, (Exhibit D), recorded in Book 393, at page 596.

The certificate of A. M. Landman, superintendent for the Five Civilized Tribes as to said instrument of December 10, 1937, states: "* * * the land described in the above deed was purchased for Osharsha John now Evalin Seber, Jimmie Powesheik, and Juanita Deere, * * * for their benefit, by virtue of their being full-blood Creek Indians, not enrolled, and that said purchase was made and said deed was executed and the same is hereby approved pursuant to the Act of Congress approved May 27, 1908 * * * and the regulations prescribed thereunder by the Secretary of the Interior."

The land described in said deed is as follows:

W½ SW¼, Section 27, Twp. 18N, Range 11E; and W½ NW¼ SW¼ SW¼ and W½ E½ NW¼ SW¼ SW¼, Section 36, Twp. 18N, Range 11E; and also the center fifty feet of lot six and the center fifty feet

of the south 33.4 feet of lot three, all in Block thirty-nine, of the original town of Sapulpa.

As to the said lots purchased on December 11, 1915, described in Exhibit A, the certificate of Joe H. Strain, acting superintendent for the Five Civilized Tribes, attached thereto, states that same: "* * * was purchased for the said Wosey John with funds Held in Trust by the United States *for her benefit from funds derived from oil royalties from restricted land, inherited by the said Wosey John, by virtue of her enrollment as a full blood citizen of the Creek Nation, opposite No. 9546 on the final approved rolls of citizens by blood of that Nation * * *.*" (Emphasis supplied.)

The land contained in deed (Exhibit B) dated March 24, 1920, is described as follows:

W½ SW¼, Section 27, Twp. 18N, Range 11E; and W½ NW¼ SW¼ SW¼ and W½ E½ NW¼ SW¼ SW¼, Section 36, Twp. 18N, Range 11E.

Gabe E. Parker, superintendent for the Five Civilized Tribes, under date of March 24, 1920, in certificate attached thereto, states that the land described in said deed was purchased "for the said Wosey Powesheik, nee John, with funds held in trust by the United States, for her benefit derived from oil royalties *from restricted land allotted to said Wosey Powesheik, nee John,* by virtue of her enrollment as a full blood citizen of the Creek Nation, opposite No. 9546 on the final approved rolls of the citizens by blood of that Nation, and that said purchase was made and said deed was executed, and the same is hereby approved pursuant to the regulations prescribed by the Secretary of the Interior under the Act of Congress approved May 27, 1908, and the Act approved August 1, 1914."

As to Exhibit C, deed executed on November 8, 1927, the land described therein being:

W½ SW¼, Section 27, Twp. 18N, Range 11E, (80 acres) A. G. McMillan, acting district superintendent for the Five Civilized Tribes, in certificate attached thereto, dated November 8, 1927, states: "* * * the land described in the above deed was purchased *for a home for the said Wosey John Deere,* with funds held in trust by the United States for her benefit derived from the sale of oil and gas royalties *from her restricted allotment* by virtue of her enrollment as a full blood citizen of the Creek Nation, opposite No. 9546 on the final approved rolls of citizens by blood of that Nation, and that said purchase was made and said deed was executed and the same is hereby approved pursuant to the regulations prescribed by the Secretary of the Interior under the Act of Congress approved May 27, 1908, and the Act approved August 1, 1914."

At the time of the execution of the deeds and the certificates of December 11, 1915, and March 24, 1920, Gabe E. Parker was superintendent for the Five Civilized Tribes and remained in such capacity until March 4, 1921, and Joseph H. Strain, during that period, was assistant superintendent, and on November 8, 1927 A. G. McMillan was acting superintendent. Exhibit D has no certificate attached, merely the statement:

"Washington, April 3, 1931. The within deed is hereby approved. (signed) Jos. M. Dixon, First Assistant Secretary."

On December 10, 1937, Wosey John, now Deere, conveyed all of her life estate theretofore reserved in said described property as shown by the warranty deed executed on March 4, 1931 (Exhibit D heretofore referred to), and *certificate* attached to said deed of *December 10, 1937* recites that the land described in said deed was purchased for Osharsha John now Evalin Seber, Jimmie Powesheik, and Juanita Deere, etc., when all other certificates heretofore set out as then and there made at the time the land was purchased proves to the contrary. Certificate designating property exempt from taxation (Exhibit F), signed by Landman, superintendent, dated December 16, 1937, certifies that:

"Pursuant to Section 2 of the Act of June 20, 1936 (49 Stat. 1542), as amended by the Act of May 19, 1937 (Public 96, 75th Congress, First Session), the following designated restricted Indian lands purchased prior to May 19, 1937, out of the trust or restricted funds of Osharsha John, now Evalin Seber, Jimmie Powesheik, and Juanita Deere, a minor. An Indian of the Creek (Tribe-Band-Nation) are hereby selected and designated as a tax exempt homestead to remain non-taxable until otherwise directed by Congress," (description following).

That certificate is at absolute variance with and contrary to the prior official recitals and records as to the lands, funds and royalties shown by official certificates as hereinbefore set out and pointed out.

Exhibit F; "Certificate Designating Property Exempt from Taxation, Place, Sapulpa, Okla., Date December 16, 1937, pursuant to Section 2 of the Act of June 20, 1936 (49 Stat. 1542), as amended by Act of May 19, 1937 (Public 96, 75th Congress, First Session), the following designated restricted Indian lands as purchased prior to May 19, 1937 out of the restricted funds of Osharsha John, now Evaline Seber, Jimmie Powesheik, and Juanita Deere, a minor, an Indian of the Creek (Tribe-Band-Nation) are hereby selected and designated *as a tax exempt homestead* (for the three joint appellees) *to remain non-taxable until otherwise directed by Congress.*

"Description:

"W½ SW Sec. 27, Twp. 18N, Range 11E & W½ NW SW SW & W½ E½ NW SW SW Sec. 36, Twp. 18 N. Range 11 E, Creek County, Okla.

"Area 87½ acres (if agricultural and/or grazing lands) Cost—(if village, town or city property).

"Osharsha John now Evaline Seber

"Jimmie Powesheik

"Juanita Deere (a minor)

"A. M. Landman, Superintendent of Five Civilized Tribes for Juanita Deere, minor. Department of the Interior, Washington, D. C.

————Unreadable.

"Approved:  Date March 24, 1938

"Oscar L. Chapman, Assistant Secretary.  Sig. WW.

* To be designated by the Indian. The Superintendent to make such designation for all minors; when the Indian *is non compos mentis;* and in those cases where the Indian fails to designate within a reasonable time.  5379 Received December 27, 1937.  Five Civilized Tribes.  Office of Indian Affairs.  Received December 31, 1937. 79539.  Received April 9, 1938.  6163. Supt. Five Civ. Tribes."

Said certificate as to exemption was filed in office of county clerk of Creek County, Oklahoma on April 12, 1938.

Act of June 20, 1936, later amended by Act of May 19, 1937, provides that "all lands the title to which is now held by an Indian *subject to restrictions against alienation or encumbrance* * * * *heretofore purchased out of trust or restricted funds of said Indian,* are hereby declared to be *instrumentalities of the Federal Government and shall be nontaxable until otherwise directed by Congress."* (Emphasis supplied.)

Same was not theretofore purchased out of such funds. All of said tracts other than the said town lots were originally allotted as restricted allotments or Creek lands to enrolled members· of the Creek tribe, but had become unrestricted before acquired *by and for* Wosey John Deere. One parcel was purchased by and for her with her restricted funds from her allotted oil royalties on December 11, 1915, said purchased parcel consisting of said town lots in the original townsite of Sapulpa, having become unrestricted against alienation as title in fee passed by proper conveyance and with consideration therefor paid and had passed over to the United States Government for the Creek tribe, another on March 24, 1920, and still another on December 8, 1927.

She retained in said deeds a life estate in said realty, including rents and profits accruing therefrom during such period with the restrictive clause therein against alienation, etc., as to the three joint grantees.[3]

In Ex parte Webb, 225 U.S. 663, 32 S.Ct. 769, 779, 56 L.Ed. 1248, it is stated:

"It is not our purpose to qualify the doctrine established by repeated decisions of this court that the admission of a new state into the Union on an equal footing

---

[3] Section 1, Enabling Act, June 16, 1906, 34 Stat. 267, Laws Relating to the Five Civilized Tribes of Oklahoma, 1890–1914, pp. 482–495 (34 Stat. 137), provides:

"That nothing contained in the said constitution shall be construed to limit or impair the rights of person or property pertaining to the Indians of said Territories (so long as such rights shall remain unextinguished) or to limit or affect the authority of the Government of the United States to make any law or

regulation respecting such Indians, their lands, property, or other rights by treaties, agreement, law, or otherwise, which it would have been competent to make if this Act had never been passed."

Subdivision 3 of Section 3 thereof:

"That the people inhabiting said proposed State do agree and declare that they forever disclaim all right and title in or to any unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian, tribe, or

with the original states imports an equality of power over internal affairs. * * *

"The most recent decision of this court *upon the subject of the proper construction* of acts of Congress passed for the admission of new states into the Union is Coyle v. Smith, 221 U.S. 559, 31 S.Ct. 688, 55 L. Ed. 853; where it was held that the Oklahoma enabling act (34 Stat. chap. 3335, p. 267), in providing that the capitol of the state should temporarily be at the city of Guthrie, and should not be changed therefrom previous to the year 1913, ceased to be a limitation upon the power of the state after its admission. The court, however, was careful to state (221 U.S. 574 [31 S.Ct. 688, 55 L.Ed. 853]): 'It may well happen that Congress should embrace in an enactment introducing a new state into the Union legislation intended as a regulation of commerce among the states, or with Indian tribes situated within the limits of such new state, or regulations touching the sole care and disposition of the public lands or reservations therein, which might be upheld as legislation within the sphere of the plain power of Congress. But in every such case such legislation would derive its force not from any agreement or compact with the proposed new state, nor by reason of its acceptance of such enactment as a term of admission, but solely because *the power of Congress extended to the subject,* and therefore would not operate to restrict the state's legislative power in respect of any matter which was not plainly within the regulating power of Congress' ". (Emphasis supplied). See, also, State of Oklahoma v. Gulf, C. & S. F. R. Co., 220 U.S. 290, 31 S.Ct. 437, 55 L.Ed.

469, Ann.Cas.1912C, 524; State of Oklahoma v. Chicago, R. I. & P. R. Co., 220 U. S. 302, 31 S.Ct. 442, 55 L.Ed. 474.

Section 412a, Title 25 U.S.C.A. provides:

"All homesteads, heretofore purchased out of the *trust* or *restricted funds* of *individual* Indians, are hereby declared to be instrumentalities of the Federal Government and shall be nontaxable until otherwise directed by Congress: Provided, That the title to such homesteads shall be held subject to restrictions against alienation or encumbrance except with the approval of the Secretary of the Interior: And provided further, That the Indian owner or owners shall select, with the approval of the Secretary of the Interior, either the agricultural and grazing lands, not exceeding a total of one hundred and sixty acres, or the village, town, or city property, not exceeding in cost $5,000, to be designated as a homestead. (June 20, 1936, c. 622, § 2, 49 Stat. 1542; May 19, 1937, c. 227, 50 Stat. 188.)" (Emphasis supplied)

Prior to April 26, 1931 restricted lands of the members of the Five Civilized Tribes, that is, restricted allotments of living full blood allottees and such restricted allotted tribal lands inherited by or devised to full bloods were restricted and in many instances on account of unexpired treaty provision and enactments pursuant thereto exempt from ad valorem taxation by the state of Oklahoma. By Section 4 of Act of May 10, 1928, 45 Stat. 495, it was declared that on and after said April 26, 1931, all restricted lands of members[4] of the Five Civilized Tribes allotted, inherited or held under devise in *excess* of

---

nation; and that until the title to any such public land shall have been extinguished by the United States, the same shall be and remain subject to the jurisdiction, disposal, and control of the United States. That land belonging to citizens of the United States residing without the limits of said State shall never be taxed at a higher rate than the land belonging to residents thereof; that no taxes shall be imposed by the State on lands or property belonging to or which may hereafter be purchased by the United States or reserved for its use."

Art. 1, Section 3, Constitution of Okla. and Enabling Act, 2d Ed., Ann. (Williams) pp. 333-338, provides:

"The people inhabiting the State do agree and declare that they forever disclaim all right and title in or to any unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian, tribe, or nation; and that until the title to any such public land shall have been extinguished by the United States, the same shall be and remain subject to the jurisdiction, disposal, and control of the United States. Land belonging to citizens of the United States residing without the limits of the State shall never be taxed at a higher rate than the land belonging to residents thereof. No taxes shall be imposed by the State on lands or property belonging to or which may hereafter be purchased by the United States or reserved for its use."

See, also, Ex parte Nowabbi, 60 Okl.Cr. 111, 61 P.2d 1139.

4 Enrolled on official roll.

160 acres, shall be subject to taxation by the state in accordance with the laws thereof. With respect to restricted allotments of living allottees the Secretary of the Interior alone then had authority to remove therefrom restrictions against alienation. Lands inherited by or held under devise by full blood members were subject to restrictions against alienation in that no conveyance by them should be valid unless approved by the County Court having jurisdiction of the settlement of the estate of the deceased allottee. Harris et al. v. Bell et al., 254 U.S. 103, 41 S.Ct. 49, 65 L.Ed. 159; Parker et al. v. Richard et al., 250 U.S. 235, 39 S.Ct. 442, 63 L.Ed. 954.

Act of May 27, 1908, 35 Stat. 312, provides that the status of lands allotted heretofore or hereafter to allottees[5] of the Five Civilized Tribes shall, as regards restrictions, alienations or encumbrances, be as follows:

"All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood including minors shall be free from all restrictions. All lands, except *homesteads, of said allottees enrolled as mixed-blood Indians having half or more than half and less than three-quarters Indian blood shall be free from all restrictions. All homesteads of said allottees enrolled as mixed-blood Indians having half or more than half Indian blood, including minors of such degrees of blood,* and all *allotted lands of enrolled full-bloods,* and *enrolled* mixed-bloods of three-quarters or more Indian blood, including minors or such degrees of blood, shall not be subject to alienation," etc. (Emphasis supplied.)

The history of this legislation as to restrictions on the part of Congress affecting the Indians shows a continuous purpose to give the Indian a more independent and responsible status as a citizen and property owner, and disclosing a gradual relinquishment of restrictions upon lands originally allotted and encouraging the acquisition of other property, gradually enlarging control until independent management is achieved, and justified, and whilst withdrawing allotted lands from former restrictions that the Indian might assume his place as a citizen and be expected to bear the same burdens of citizens of the same class whether Indian, white, or black. Mitchell v. Metcalf & Eddy, 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384.

Act of Congress of June 2, 1924, 43 Stat. 253, 8 U.S.C.A. § 3, as a climax of such purpose, provides:

"All Indians born within the territorial limits of the United States are declared to be citizens of the United States. The granting of citizenship to Indians shall not in any manner affect the right of any Indian to tribal or other property."

An exemption as to taxation created by contract in the treaties between United States and Five Civilized Tribes is inviolate. Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941.

Act of Congress, February 10, 1942 (c. 56—2d session Public Laws 449—77th Cong., S. 1412) 56 Stat. 87, 25 U.S.C.A. § 352c entitled "An Act to amend the Act of June 11, 1940 (Public, Numbered 590, Seventy-sixth Congress, third session), providing for the relief of Indians who have paid taxes on allotted land", provides:

"The Act of June 11, 1940 (Public, Numbered 590, Seventy-sixth Congress, ch. 315, third session [25 U.S.C.A. Section 352c]) be, and the same is hereby, amended to read:

" 'The Secretary of the Interior is hereby authorized, under such rules and regulations as he may prescribe, to reimburse Indian allottees, or Indian heirs or Indian devisees of allottees, for all taxes paid, including penalties and interest, on so much of their allotted lands as have been patented in fee prior to the expiration of the period of *trust* without application by or consent of the patentee: Provided, That if the Indian allottee, or his or her Indian heirs or Indian devisees, have *by their own act accepted* such patent, no reimbursement shall be made for taxes paid, including penalties and interest, subsequent to acceptance of the patent: Provided further, That the fact of such acceptance shall be determined by the Secretary of the Interior. [Emphasis supplied]

" 'In any case in which a claim against a State, county, or political subdivision thereof, for taxes collected upon such lands during the trust period has been reduced to judgment and such judgment remains unsatisfied in whole or in part, the Secretary of the Interior is authorized, upon reimbursement by him to the Indian of the

---

[5] Enrolled members of the Tribe.

amount of taxes including penalties and interest paid thereon, and upon payment by the judgment debtor of the costs of the suit, to cause such judgment to be released: Provided further, That in any case, upon submission of adequate proof, the claims for taxes paid by or on behalf of the patentee or his Indian heirs or Indian devisees have been satisfied, in whole or in part, by the State, county, or political subdivision thereof, the Secretary of the Interior is authorized to reimburse the State, county, or political subdivision for such amounts as may have been paid by them.'

"Sec. 2. There is hereby authorized to be appropriated the sum of $95,000, or so much thereof as may be necessary, out of any money in the Treasury not otherwise appropriated, for the purpose of carrying out the provisions of this Act.

"Any appropriations made pursuant to this section shall remain available until expended."

(That evidently means when the United States was a party to such actions.)

Section 1 of Act of June 20, 1936, 49 Stat. 1542 provided:

"That there is hereby authorized to be appropriated, out of any money in the Treasury of the United States not otherwise appropriated, the sum of $25,000, to be expended under such rules and regulations as the Secretary of the Interior may prescribe, for payment of taxes, including penalties and interest, assessed against *individually* owned Indian land the title to which is held subject to restrictions against alienation or encumbrance except with the consent or approval of the Secretary of the Interior, *heretofore purchased out of trust or restricted funds of an Indian, where the Secretary finds that such land was purchased with the understanding and belief on the part of said Indian that after purchase it would be nontaxable, and for redemption or reacquisition of any such land heretofore or hereafter sold for nonpayment of taxes.*" (Emphasis supplied.)

The passage of this act containing this appropriation as well as act of February 10, 1942, was occasioned by developments disclosed in United States v. Board of Com'rs of Comanche County, D.C., 6 F. Supp. 401; United States v. Board of Com'rs of Pawnee County, D.C., 13 F. Supp. 641; Board of Com'rs of Caddo County v. United States, 10 Cir., 87 F.2d 55; Board of Com'rs of Jackson County

v. United States, 10 Cir., 100 F.2d 929; Id., 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313.

Act of May 19, 1937, 25 U.S.C.A. § 412a, is as follows:

"All homesteads, *heretofore purchased out of the trust or restricted funds of individual Indians, are hereby declared to be instrumentalities of the Federal Government, and shall be nontaxable until otherwise directed by Congress: Provided, That the title to such homesteads shall be held subject to restrictions against alienation or encumbrance except with the approval of the Secretary of the Interior: And provided further, That the Indian owner or owners shall select, with the approval of the Secretary of the Interior, either the agricultural and grazing lands, not exceeding a total of one hundred and sixty acres, or the village, town, or city property, not exceeding in cost $5,000, to be designated as a homestead.*" (Emphasis supplied.)

Under Section 1 of Act of May 27, 1908, 35 Stat. 312, as amended by Act of May 10, 1928 (45 Stat. 495), all *homesteads* of allottees therein named and enrolled as mixed-bloods having half or more than half of Indian blood, and all allotted lands of enrolled full-bloods, and enrolled mixed-bloods of three-quarters or more Indian blood, shall not be subject to alienation, contract to sell, power of attorney, or any other encumbrance prior to April 26, 1931, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceedings for the benefit of the respective Indians as he may prescribe.

Section 1 of Act of May 10, 1928, amending said Act of May 27, 1908, entitled "An Act to extend the period of restriction on lands of certain members of the Five Civilized Tribes, and for other purposes," is as follows:

" * * * That the restrictions against the alienation, lease, mortgage, or other encumbrance of the lands allotted to members of the Five Civilized Tribes in Oklahoma, enrolled as of one-half or more Indian blood, be, and they are hereby, extended for an additional period of twenty-five years commencing on April 26, 1931: Provided, That the Secretary of the Interior shall have the authority to remove the restrictions, upon the applications of the Indian owners of the land, and may remove such restrictions,

wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe."

In case of death of allottees of the Five Civilized Tribes of one-half or more Indian blood leaving full-blood heirs or devisees, Congress provided that no conveyance of their interest in the lands inherited should be valid unless approved by the Court having jurisdiction of the settlement of the estate of the deceased allottee or testator, as provided by Section 9 of Act of Congress of May 27, 1908, and as amended by Section 1 of Act of Congress of April 12, 1926, 44 Stat. 239, and further as amended by Section 2 of Act of May 10, 1928, 45 Stat. 495.

Section 9 of Act of Congress of May 27, 1908, 35 Stat. 312, 315, provides as follows:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee: Provided Further, That if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March fourth, nineteen hundred and six, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the manner provided in section one hereof, for the use and support of such issue, during their life or lives, until April twenty-sixth, nineteen hundred and thirty-one; but if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will free from all restrictions; if this be not done, or in the event the issue hereinbefore provided for die before April twenty-sixth, nineteen hundred and thirty-one, the land shall then descend to the heirs, according to the laws of descent and distribution of the State of Oklahoma, free from all restrictions."

Section 1 of Act of April 12, 1926, amending Section 9 of Act of May 27, 1908, provides as follows:

" * * * That section 9 of the Act of May 27, 1908 (Thirty-fifth Statutes at Large, page 312), entitled 'An Act for the removal of restrictions on part of the lands of allottees of the Five Civilized Tribes, and for other purposes,' be, and the same is hereby, amended to read as follows: 'Sec. 9. The death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, That hereafter no conveyance by any full-blood Indian of the Five Civilized Tribes of any interest in lands restricted by section 1 of this Act acquired by inheritance or devise from an allottee of such lands shall be valid unless approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee or testator: Provided further, That if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March 4, 1906, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior for the use and support of such issue, during their life or lives, until April 26, 1931; but if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will free from restrictions; if this be not done, or in the event the issue hereinabove provided for die before April 26, 1931, the land shall then descend to the heirs, according to the laws of descent and distribution of the State of Oklahoma, free from all restrictions: Provided, That the word 'issue' as used in this section shall be construed to mean child or children."

Under Section 9 of Act of May 27, 1908, as amended by Section 1 of Act of April 12, 1926, except where allottees of the Five Civilized Tribes of one-half or more Indian blood should die leaving issue surviving, born since March 4, 1906, the homestead of such deceased allottees remained inalienable unless removal of restrictions was effected by the Secretary of the Interior, for the use and support of such issue during their life or lives, until April 26, 1931, and after the passage of said act of May 10, 1928, until April 26, 1956.

The power of Congress as to continuing or reimposing restrictions upon the alienation of allotted Indian lands in the Creek Nation has been passed on (Tiger v. Western Inv. Co., 221 U.S. 286, 31 S.Ct. 578, 55 L.Ed. 738; Brader v. James, 246 U.S. 88, 38 S.Ct. 285, 62 L.Ed. 591), and Section 1 of Act of January 27, 1933, 47 Stat. 777, considered in Whitchurch v. Crawford, 10 Cir., 92 F.2d 249, with reference to the supervision of the Secretary of the Interior, relating to restricted funds and other securities theretofore in custody of Secretary of

Interior under original Section 9 of Act of May 27, 1908 "belonging to and only so long as belonging to Indians of the Five Civilized Tribes in Oklahoma of one-half or more Indian blood, enrolled or unenrolled," such Indians declared to be restricted and remain subject to jurisdiction of Secretary of Interior until April 26, 1956.

To said Section 1 is attached a proviso:

"That where the entire interest in any tract of restricted and tax-exempt land belonging to members of the Five Civilized Tribes is acquired by inheritance, devise, gift, or purchase, with restricted funds, by or for restricted Indians, such lands shall *remain* restricted and *tax-exempt* during the life of and as long as held by such restricted Indians, but not longer than April 26, 1956, unless the restrictions are removed in the meantime in the manner provided by law." (Emphasis supplied.)

Such inherited (remain) restricted or tax-exempt land necessarily meant lands of such tribe allotted to members of the tribe.

Originally in said Section 1 of Act of May 27, 1908, reference is made to enrolled Indians, and then by the act of January 27, 1933, is included not only enrolled but unenrolled Indians where they acquire by inheritance or devise such land, and if it is originally designated as an allotted homestead, though where such Indian acquired it by inheritance or devise, if such Indian was enrolled or unenrolled as one-half blood of such tribe, then the land so held shall *remain restricted* and tax-exempt, and as to restrictions against alienation conveyances relative thereto to be subject to the approval of the Secretary of the Interior, etc., and the Indians not being required to *live in* Oklahoma, as the reference is made in said Section 1 to supervision of the Secretary of the Interior relating to funds and other securities theretofore "belonging to and only so long as belonging to Indians of the *Five Civilized Tribes in Oklahoma of one-half or more Indian blood, enrolled or unenrolled.*" (Emphasis supplied.)

In what is known as the Original Creek Treaty, ratified and confirmed by Congress on March 1, 1901, c. 676, 31 Stat. 861, Sections 2, 5 and 6, one hundred and sixty (160) acres of allotted land was to be selected by the allottee to include improvements which belonged to him, constituting an allotment, forty (40) acres to be selected and designated as a homestead which "shall be non-taxable and inalienable and

free from any incumbrance whatever for twenty-one years," (as to full bloods by Section 19, Act of April 26, 1906, extended to twenty-five years from that date), "for which he shall have a separate deed" so conditioned as required in Creek treaty.

(Section 10 of said treaty covers townsites.)

Supplemental Creek Treaty was confirmed by Congress on June 30, 1902 (c. 1323, 32 Stat. 500), Section 3 thereof providing that paragraph 2 of section 3 of the agreement ratified by said act of Congress approved March 1, 1901, should be amended, not changing the effect of the provision in the original treaty as to allotments and homesteads, merely providing detail as to the appraised value, etc.

Section 19 of Act of April 26, 1906, c. 1876, 34 Stat. 137, entitled "An Act to provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory, and for other purposes," reimposed restrictions as to full bloods in the Five Civilized Tribes, and extended same from 21 to 25 years after the approval of said act, and provided that the quantum of Indian blood possessed by any member of said tribes shall be determined by the rolls of citizens of said tribes approved by the Secretary of the Interior, with the proviso that all lands upon which restrictions are removed shall be subject to taxation, and other lands shall be exempt from taxation as long as the title remains in the original allottee.

The Solicitor of the Department of the Interior, on March 14, 1934, held that:

"Apropos of this is the declaration that 'Where the entire interest in any tract of restricted and tax-exempt land * * * is acquired * * * by restricted Indians, such lands shall remain restricted, and tax exempt.' This declaration obviously looks to the future and not to the past and discloses a plain intent on the part of Congress to preserve existing restrictions rather than to reimpose restrictions once removed or change the form of existing restrictions. These considerations lead to the conclusion that the proviso relates only to lands acquired after date of enactment and not to prior acquisitions."

Congressional legislation has had for its purpose especially as to the Five Civilized Tribes to gradually emancipate them from their former status so as to fit them

for duties of citizenship and self support and maintenance. The developed responsibility has been indicated. The electorate of the state of Oklahoma for three consecutive terms elected a member of the Five Civilized Tribes to the United States Senate, and two different members of said tribes to the lower house of the Congress of the United States, one consecutively for ten terms and the other for ten terms with an interim of one term. Four members of said tribes have been elected and re-elected district judge, one of them elevated by the electorate to the Supreme Court of the state and now serving as Chief Justice, and two of the others are still continuing as district judges, and the other holds some responsible appointive position in the Interior Department in Washington. One was elected and served a full term as Secretary of State, and another is entering upon his third consecutive term by election as Clerk of the Supreme Court. Two members of said tribes have been speaker of the House of Representatives of the legislature and another president pro tempore of the Senate of the legislature, and members of said tribes have on many occasions and repeatedly been elected to the State Senate and the lower house of the legislature, and the county offices, including county judge, have been many times and repeatedly filled by election from members of the Five Civilized Tribes. In the business sphere the Five Civilized Tribes have engaged in banking, merchandising, ranching, law, medicine, and education. Mitchell v. Metcalf & Eddy, supra; Shaw v. Gibson-Zahniser Oil Corp., 276 U.S. 575, 48 .S.Ct. 333, 72 L.Ed. 709.

As to the treaty provisions between the United States and the Five Civilized Tribes, under which the United States Government made contracts with the Indians guaranteeing exemption of taxes, the courts have given a liberal construction to the treaty to protect the Indians in exercise of such right as therein guaranteed. But as to legislative matters arising since April 26, 1931, the general rule as to strict construction applies, that is, to follow the manifest wording of the statute and to be determined from the surrounding circumstances and the language or words from which a conclusion reasonably and necessarily follows. Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941; Blundell v. Wallace, 267 U.S. 373, 45 S.Ct. 247, 69 L.Ed. 664; Cully v. Mitchell, 10 Cir., 37 F.2d 493; Choteau v. Burnet, 283 U.S. 691, 51 S.Ct. 598, 75 L. Ed. 1353; Shaw v. Gibson-Zahniser Oil Corp., 276 U.S. 575, 48 S.Ct. 333, 72 L.Ed. 709; Metcalf & Eddy v. Mitchell, 269 U. S. 514, 46 S.Ct. 172, 70 L.Ed. 384.

Section 2, Act of June 20, 1936, as amended by Act of May 19, 1937, was not passed in view of matters of the Five Civilized Tribes, but as to other tribes. 6 F.Supp. 401, supra; 13 F.Supp. 641, supra; 87 F.2d 55, supra; 100 F.2d 929, supra; 308 U.S. 343, 60 S.Ct. 285, 84 L. Ed. 313, supra.

Congressional Record, Senate, June 6, 1936, p. 9322, Relief of Indian Lands From Taxation:

"Mr. King: Mr. President, I should like to have an explanation of the bill.

"Mr. Thomas of Oklahoma (Chairman of Committee on Indian Affairs): Mr. President, this bill seeks to accomplish certain purposes * * *. Formerly the Congress authorized the Secretary of the Interior to buy land for landless Indians * * *. Some lands were taken from private ownership and assessing authorities proceeded to assess the land for taxes. * * * In some cases tax warrants have been issued and the Indians have been threatened with dispossession. * * * tax warrants and tax assessments should be paid and the title to the lands cleared. The bill authorizes the appropriation of money for that purpose.

"Section 2 (of said act) provides that the lands so secured shall hereafter be nontaxable.

"The President pro tempore. The question is on the third reading and passage of the bill. (No further discussion or question raised.")

"The bill was ordered to a third reading, read the third time, and passed, as follows:" (Said Act of June 20, 1936 follows in the record.) Richbourg Motor Co. v. United States, 281 U.S. 528, 50 S. Ct. 385, 74 L.Ed. 1016, 73 A.L.R. 1081; McLean v. United States, 226 U.S. 374, 33 S.Ct. 122, 57 L.Ed. 260.

The Creeks of the Five Civilized Tribes could not properly be denominated landless Indians. The Congress had not recently authorized the Secretary of the Interior to purchase lands for them or any of them. As one of the Five Civilized Tribes, lands were allotted to their members by the Government, under the Creek

treaty, including all full blood allottees and their heirs and they still own said lands except as restrictions have been removed and such owners permitted to sell same, and that has occurred among the Creeks only in rare and exceptional cases. Under the treaties and facts hereinbefore set forth, such Creek lands, consisting of full blood allotments, have been nontaxable prior to April 26, 1931, and the lands which have been purchased from their restricted funds under the decisions hereinbefore cited were taxable not only before such purchase where' restrictions had ceased, or been removed, and after 25 years from April 26, 1906, which would be April 26, 1931, unless reimposed. Under the said acts of April 12, 1926, and May 10, 1928, Congress continued in applicable cases not only restrictions but also nontaxability not exceeding 160 acres, held by an allottee after April 26, 1931. That would cover the original allotted lands of Wosey John Deere, but a serious question arises as to whether after the tax exemption had expired under the treaty provision and limitation it was in the power of Congress to extend the exemption as to taxation. It is not essential here to determine that question in order to dispose of this case.

The land acquired by inheritance by a full blood under such conditions as it would be restricted after April 26, 1931, as well as the lands purchased under the supervision of the Secretary of the Interior with restricted funds, such land under such a state of facts could be considered as restricted by reimposition, but not to be exempt from taxation either as to such allottee or unenrolled full blood born after March 4, 1906.

Section 2 of said act of June 20, 1936, as amended by act of May 19, 1937, is not applicable to the lands here involved.

The word "homestead" as used in this statute, if intended to apply to the Five Civilized Tribes whose members were citizens of Oklahoma and also of the United States, would have contemplated a homestead as defined by state law.

Section 1, Article 12, Constitution of Oklahoma, provides that:

"The homestead of any family in this State, not within any city, town, or village, shall consist of not more than one hundred and sixty acres of land, which may be in one or more parcels, to be selected by the owner. The homestead within any city, town, or village, owned and occupied as a residence only, shall consist of not exceeding one acre of land, to be selected by the owner: Provided, That the same shall not exceed in value the sum of five thousand dollars, and in no event shall the homestead be reduced to less than one-quarter of an acre, without regard to value; And Provided Further, That in case said homestead is used for both residence and business purposes, the homestead interests therein shall not exceed in value the sum of five thousand dollars: Provided, That nothing in the laws of the United States, or any treaties with the Indian Tribes in the State, shall deprive any Indian or other allottee of the benefit of the homestead and exemption laws of the State: And Provided Further, That any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired."

Section 34, Title 68, Okl.St.Ann. (68 O.S.1941 § 34), provides:

"Homesteads, as defined in Section 1 hereof, are hereby classified for the purpose of taxation as provided in Section 22, Article 10 of, and subsequent amendments to, the Constitution of the State of Oklahoma; and all homesteads in this State shall be assessed for taxation the same as other real property therein, except that each homestead, as defined in this Act, shall be exempted from all forms of ad valorem taxation to the extent of one thousand ($1,-000.00) dollars of the assessed valuation thereof, as hereinafter provided, except that all assessments, levies, encumbrances, and other contract obligations incurred or made prior to the taking effect of this Act, shall in no way be affected or impaired by this Act. Laws 1936, Ex.Sess., p. 52, § 2."

Section 33 thereof provides:

"The term 'homestead,' as used in this Act, shall mean and include the actual residence of a natural person who is a citizen of the State of Oklahoma, provided the record actual ownership of such residence be vested in such natural person residing and domiciled thereon. The surviving spouse and minor children of a deceased person shall be considered record owners of the homestead where the title is in the name of the deceased, but in all other cases the deed or other evidence of ownership must be of record in the office of County Clerk on January 1st in order for any person to be the record actual owner. A rural homestead shall not include more than One

Hundred Sixty (160) acres of land and the improvement thereon; and an urban homestead shall not include any land except the lot or lots, or the unplatted tract, upon which are located the dwelling, garage, barn, and/or other outbuildings necessary or convenient for family use.

"Provided, that no building which is used in whole, or in part, for commercial purposes shall be deemed a homestead under the provisions of this Act; and

"Provided further, that the keeping of boarders or roomers by citizens in a building maintained otherwise exclusively as a home shall not be considered as commercial purposes as contemplated by this Act.

"The term 'rural homestead' as used herein shall mean and include any homestead located outside a city or town or platted subdivision or addition.

"The term 'urban homestead' as used herein shall mean and include any homestead located within any city or town whether incorporated or unincorporated, or located within any platted subdivision or addition, whether such subdivision or addition be a part of a city or town or a part of a township; provided further, that in no case shall an urban homestead exceed in area one (1) acre. Laws 1936, Ex.Sess., p. 52, § 1; Laws 1939, p. 405, § 1."

In the deed executed by Wosey John, now Deere, on December 10, 1937, is conveyed to the appellees "all of the life estate heretofore reserved in the following described property described in deed executed by her on March 4, 1931", described as follows:

"W½ SW¼ of Section 27, Twp. 18N, Range 11E; W½ NW¼ SW¼ SW¼ and W½ E½ NW¼ SW¼ SW¼ of Section 36, Twp. 18N, Range 11E, also the center 50 feet of lot 6 and the center 50 feet of the south 33.4 feet of lot 3, all in Block 39, of the original town of Sapulpa,
"together with all the improvements thereon, and the appurtenances thereunto belonging * * *. To have and to hold said described premises unto said grantees, their heirs, and assigns, forever, free, clear, and discharged of all former grants, charges, taxes, judgments, mortgages, and other liens and encumbrances of whatsoever nature, subject to the condition that no lease, deed, mortgage, power of attorney, contract to sell, or other instrument affecting the land herein described or the title thereto shall be of any force and effect, unless approved by the Secretary of the Interior or the restrictions from said land are otherwise removed by operation of law," substantially identical with the clause contained in Exhibit D, deed executed by her to appellees dated March 4, 1931.

Section 69, Title 60, Okl.St.Ann. 60 O.S. 1941 § 69, provides:

"The owner of a life estate must keep the buildings and fences in repair from ordinary waste, and must pay the taxes and other annual charges, and a just proportion of extraordinary assessments benefiting the whole inheritance."

Under deed of December 10, 1937, when properly approved by the Interior Department, the complete title vested in the appellees, and the question may arise as to her liability under the warranty therein for any encumbrances remaining thereon for taxes, though such warranty was executed as a pure gift. Claim of the appellees against the mother or the estate of the mother, according to the record, has not been set up, but such claim for exemption of the land from state taxation until Congress otherwise provides was presented, not by virtue of a mandatory provision of the Creek treaty, and thereby with a guaranty on part of the United States Government. If appellees prevail it must be by strict construction in application of the facts under act of June 20, 1936, Section 2, providing "lands *. * * heretofore purchased out of trust or restricted funds of the said Indian, are hereby declared to be instrumentalities of the Federal Government and shall be nontaxable until otherwise directed by Congress."

The lands described in Exhibits A, B, and C *were not heretofore purchased by the trust or restricted funds of appellees for appellees, but out of such funds of Wosey John Deere, by and for her,* and the eighty-acre tract as a home for her—not as an original homestead but for a home for her. She already had an allotment homestead, burdened with the production of oil, with tax exemption, and it may be assumed that it was not suitable for a home on account of oil production, as it was purchased for a home for her. All lands described in said deeds, none being part in any way of her allotment, were purchased by and for her and not for any one else.

Section 2 of Act of June 20, 1936, as amended by Act of May 19, 1937, 25 U.S. C.A. § 412a, provided that *"all homesteads, heretofore purchased out of the trust or restricted funds of individual Indians, are*

*hereby declared to be instrumentalities of the Federal Government and shall be non-taxable until otherwise directed by Congress:* [emphasis supplied] Provided, That the title to such homesteads shall be held subject to restrictions against alienation or encumbrance except with the approval of the Secretary of the Interior: And provided further, That the Indian owner or owners shall select, with the approval of the Secretary of the Interior, either the agricultural and grazing lands, not exceeding a total of one hundred and sixty acres, or the village, town, or city property, not exceeding in cost $5,000, to be designated *as a homestead.*" (Emphasis supplied.)

The lands described in Exhibits A, B and C were not purchased with restricted trust funds of appellees, but from restricted funds of the mother, and the mother having on March 4, 1931 conveyed said restricted lands to said appellees retaining "all the rents and profits to be derived from all of the above property as long as she lives, that is, grantor retains a life estate in all of the real estate described in this deed, together with all the improvements thereon and such appurtenances thereunto belonging, and warrant the title to the same" and subsequently on, and after May 19, 1937, December 10, 1937 had conveyed all of her life estate theretofore reserved by her in all of said lands together with all improvements thereon and the appurtenances thereunto belonging and warrant the title to the same," then the appellees were not justified under the facts of the record and of which we take judicial knowledge and the law to designate that 87½ acres, all of it except the town lots, *as a homestead* jointly for appellees, not having theretofore been purchased out of restricted funds of said appellees, then to say in order to place that property in favor of these three unenrolled full blood Indians—not enrolled members of the Creek tribe—in a status as being immune from taxation until Congress shall otherwise provide, that said Section 69, Title 60, Okl. Stat.Ann., 60 O.S.1941 § 69, supra, requiring the holder of a life estate to "keep the buildings and fences in repair from ordinary waste, and must pay the taxes and other annual charges, and a just proportion of extraordinary assessments benefiting the whole inheritance," when her estate would be liable for a breach of that statutory provision though their claim would be without any actual consideration other than love and affection for the war-ranty, that immunity from taxation cannot be sustained on the question of relation.

In Nos. 2558, 2559, 2560, United States v. Oklahoma Tax Commission, pending in the Circuit Court of Appeals for the Tenth Circuit, this court takes judicial knowledge of contents of records in said cases, and inheritance or transfer or excise tax as provided by the Oklahoma statute as therein disclosed to be claimed, involves $359,643 of restricted funds in custody of Secretary of Interior from estate of Wosey John Deere, full blood Creek woman killed in an automobile accident September 2, 1938, on which the Oklahoma State Tax Commission recovered such excise tax thereon in sum of $14,908 under judgment of the United States District Court for the Eastern District of Oklahoma, which the United States, as appellant, seeks in this court in said cases to have vacated on review.

Under application of the plea of relation, such immunity from taxation may not be allowed. Such relation does not arise except on account of a consideration therefor, or an equity would have to exist on the part of appellees, which is not shown here. Godfrey v. Iowa Land & Trust Co., 21 Okl. 293, 95 P. 792, 797; Stark v. Starrs, 6 Wall. 402, 18 L.Ed. 925; Jones v. Meehan, 175 U.S. 1, 4, 20 S.Ct. 1, 2, 44 L. Ed. 49, 51; Wallace v. Adams, 204 U.S. 415, 419, 27 S.Ct. 363, 51 L.Ed. 547.

The land restricted in the mother out of pure love and affection was by her donated to the appellees.

This court takes judicial knowledge of the fact that the inherited restricted estate of Wosey John Deere in the custody of the Secretary of the Interior on September 2, 1938 amounted to $359,643 and the record shows that these appellees were her heirs, and to say that appellees are not required to present a claim for that and collect same, but on the doctrine of relation that they shall have a right to be released from state taxes thereon until Congress otherwise provides in effect results in violating the Tenth Amendment to the Constitution of the United States.

The date of the judgment is July 17, 1941, from which this appeal is prosecuted. Neither the United States nor the Secretary of the Interior nor any governmental agency was a party thereto either in the trial or appellate court nor has any appearance in any respect been herein made. An individual action brought by allottees or members

of the Five Civilized Tribes with no appearance in any way whatever on the part of the United States, the statute of limitations and mandatory preliminary requirements as to state procedure applies. In Broadwell v. Board of Commissioners of Bryan County, 88 Okl. 147, 211 P. 1040, certiorari denied 262 U.S. 750, 43 S.Ct. 525, 67 L.Ed. 214, it was held that the statute of limitations in such a case constituted a bar to the parties thereto. See, also, Ward v. Board of County Com'rs of Love County, 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751; Carter v. Collins, 174 Okl. 4, 50 P.2d 203; Antrim Lumber Co. v. Sneed, 175 Okl. 47, 52 P.2d. 1040. As to an action thereafter brought by the United States for the use or benefit of any such party neither the statute of limitations nor said preliminary state statutory procedure applied. Bryan County v. United States, 10 Cir., 123 F.2d 782, certiorari denied 62 S.Ct. 907, 86 L.Ed. ——.

Act of June 11, 1940, 54 Stat. 298, and of February 10, 1942, 25 U.S.C.A. § 352c, provided for reimbursement to Indian allottees or Indian heirs or Indian devisees of allottees for taxes paid including interest paid on so much of their restricted allotted lands as may have been patented in fee and restrictions not to expire prior to the expiration of the twenty-five year period of trust, and that does not apply to any lands of the members of the Five Civilized Tribes but to Indians that received allotments and patents under the General Allotment Act of February 8, 1887, 24 Stat. 388, 25 U.S.C.A. § 331 et seq., in cases in which a claim against a state, county or political subdivision for taxes collected upon such land during the trust period, which was the twenty-five year trust period, later extended, under the allotments made under said act of February 8, 1887.

No trust restricted funds of appellees or either of them were invested in said realty as to which the taxes were here involved. The eighty acres included in Exhibit C was purchased by the Secretary of the Interior as a home for the mother out of her restricted funds described in the conveyance with a warranty by Wosey John, now Deere, on March 4, 1931 to appellees jointly, retaining in herself a life estate including therefrom proceeds from rents and profits. If it was her statutory duty to pay the lawful taxes thereon her estate was amply able to meet such liability. Appellees must bring themselves within the express terms of the statute and within a strict construction thereof as no other reasonable conclusion can be reached therefrom sustaining such right on their part, and the application of the doctrine of relation in Indian matters is not justified by this record.

Evelyn Seber, otherwise designated as Osharsha John, Jimmie Powshiek and Juanita Deere, now McIntosh, all born to said Wosey John Deere after March 4, 1906, and unenrolled, are her heirs and by inheritance participate in all of her estate including her allotted realty consisting of a forty-acre original homestead and the additional part of said original allotment, all restricted, and also her restricted inherited allotted Creek lands, including restricted royalties and restricted funds, from all of her land, all held by the Secretary of the Interior as such restricted funds and realty for her benefit at and prior to September 2, 1938, the date of her death occasioned by an automobile accident, and said three unenrolled full blood heirs participate by inheritance therein and after September 2, 1938, the Secretary holds in trust their respective inheritance, which may rest under another status. Landman, Supt., v. Com'r of Internal Revenue, 10 Cir., 123 F.2d 787.

The applicability of federal instrumentalities constituting estate tax immunity is to be applied only by a strict construction. Under the Farm Security Administration, money is made available by loan from federal funds to acquire non-urban homes and also vast sums of money have been advanced under the Federal Housing Administration as to urban homes. Under the Farm Security Administration money has been furnished to members of the Five Civilized Tribes, whose restrictions expired by operation of law, and their allotments had been lost, and as to persons who had received free homes or homesteads in what was formerly known as Oklahoma Territory, and had been lost, to acquire homes upon which these Government agencies hold liens for these vast advancements or guaranties, and the occasion may arise when Congress, supported by public sentiment, will pass a like act for relief as to such holders of non-urban homes as well as urban homes, providing that same will be immune from state taxation, denominating same as a federal instrumentality. Then the question would arise as to whether that was an extension of the ruling in this case. A strict construction should here be followed.

By Joint Resolution, Congress extended the tribal existence and government of the Five Civilized Tribes of Indians in the Indian Territory (S.J.Res. 37, March 2, 1906, 34 Stat. 822; Laws Relating to the Five Civilized Tribes in Oklahoma [1890-1914], p. 524), as follows:

"Resolved by the Senate and House of Representatives of the United States of America in Congress assembled, That the tribal existence and present tribal governments of the Choctaw, Chickasaw, Cherokee, Creek, and Seminole tribes or nations of Indians in the Indian Territory are hereby continued in full force and effect for all purposes under existing laws *until all property of such tribes, or the proceeds thereof,* shall be distributed among the individual members of said tribes unless hereafter otherwise provided by law." (Emphasis supplied.)

Later in act of April 26, 1906, 34 Stat. 137, the last Section (28) of said Act, other than repealing part, is as follows:

"That the tribal existence and present tribal governments of the Choctaw, Chickasaw, Cherokee, Creek, and Seminole tribes or nations are hereby continued in full force and effect for all purposes authorized by law, until otherwise provided by law, but the tribal council or legislature in any of said tribes or nations shall not be in session for a longer period than thirty days in any one year: Provided, That no act, ordinance, or resolution (except resolutions of adjournment) of the tribal council or legislature of any of said tribes or nations shall be of any validity until approved by the President of the United States: Provided further, That no contract involving the payment or expenditure of any money or affecting any property belonging to any of said tribes or nations made by them or any of them or by any officer thereof, shall be of any validity until approved by the President of the United States."

Reference has been made herein to the fact that this suit has been brought by the appellees, three non-enrolled but full United States and state citizens—full blood Creek Indians—without the United States Government in any way appearing, and that under such facts the statute of limitations and mandatory preliminary procedure apply.

In Helvering v. Mountain Producers Corp., 303 U.S. 376, 58 S.Ct. 623, 627, 82 L.Ed. 907, it is stated:

"The power to tax should not be crippled 'by extending the constitutional exemption from taxation to those subjects which fall within the general application of non-discriminatory laws, and where no direct burden is laid upon the governmental instrumentality, and there is only remote, if any, influence upon the exercise of the functions of government.'"

Under the *state* homestead exemption statute, every homestead as therein defined is in effect exempt from taxation up to the assessed value of $1,000 and where it exceeds that it is only taxable for the assessed sum in excess of an assessed $1,000.

These appellees under this record are not entitled jointly to tax exemption on the 87½ acres land designated as *a homestead* for the three appellees under act of Congress, but may when facts justify have assistance or credit under the state act hereinbefore set out.

In the conclusion of the majority opinion insofar as the judgment of the trial court grants a recovery for the taxes and penalties for the taxable year beginning July 1, 1936, was erroneous, to that extent I concur, and also in the conclusion that allowance of interest on the taxes paid should not be permitted, but I further conclude the judgment of the trial court in toto should also be reversed and remanded.