## STATE OF OKLAHOMA, ON THE RELATION OF WEST, ATTORNEY GENERAL, v. GULF, COLORADO & SANTA FE RAILWAY COMPANY.

### BILL IN EQUITY.

No. 14, Original. Argued February 23; 24, 1911.—Decided April 3, 1911.

*Oklahoma* v. *Atchison, Topeka & Santa Fe Ry. Co., ante,* p. 277, followed to effect that a State cannot invoke the original jurisdiction of this court by suit against individual defendants on its behalf where the primary purpose is to protect citizens generally against violation of its own laws by the defendants.

A State cannot invoke the original jurisdiction of this court to enforce a judgment rendered in its courts for a violation of its penal or criminal laws, *Wisconsin* v. *Pelican Insurance Company,* 127 U. S. 265, or to enforce a penal statute.

A suit by a State, to enjoin carriers from conveying intoxicating liquors into its territory or an Indian reservation therein, is one to enforce by injunction regulations prescribed by the State for violations of its own penal statutes and is not within the original jurisdiction of this court; and so *held* as to a suit brought by the State of Oklahoma to enjoin railway and express companies from introducing liquor into its territory.

THE facts, which involve the construction of the provisions of the Constitution of the United States conferring original jurisdiction on this court in controversies in which a State is a party, are stated in the opinion.

*Mr. Charles West,* Attorney General of the State of Oklahoma, for complainant.

*Mr. Lawrence Maxwell* and *Mr. S. T. Bledsoe,* with whom *Mr. Martin L. Clardy, Mr. William W. Green, Mr. Charles W. Stockton, Mr. T. B. Harrison, Jr.,* and *Mr. Joseph S. Graydon* were on the brief, for defendants.

MR. JUSTICE HARLAN delivered the opinion of the court.

The State of Oklahoma, by the present suit, invokes the original jurisdiction of this court for its protection against certain acts, alleged to have been done or threatened to be done by the respective defendants in derogation of its rights as a State. The case has been heard upon demurrers filed by the several defendants. Some of the demurrers proceed upon the specific ground that this court cannot take jurisdiction of the cause, while others add the general ground that the bill does not show any facts entitling the State to the relief sought by the bill.

As the case involves some questions of a grave character, it is proper to set forth with some fullness the grounds upon which the State bases its claim for relief.

It is alleged in the bill that the defendant companies are corporations of States other than Oklahoma, except that the American Express Company is a partnership, composed of individuals who are citizens and residents of New York; that what were formerly the Territory of Oklahoma and the Indian Territory constitute the present State of Oklahoma; that the lands in the Indian Territory, owned by various Indian tribes, were, by agreement or treaties with the United States, to be allotted in severalty among the members of such tribes, with certain exceptions named in the treaties, which it is not necessary to set out here; that by said agreement or treaties the United States agreed to maintain strict laws in said Territory, particularly in the allotted lands, against the introduction, sale, barter or the giving away of liquors and intoxicants of any kind or quality; and, that pursuant to said agreement and treaties Congress, by the act of June 16, 1906, 34 Stat., Pt. 1, 267, c. 3335, § 3, made it a condition of the admission of Oklahoma into the Union as a State that it should provide by its constitution that "the manufacture, sale, barter, giving away or otherwise

furnishing, except as therein provided, of intoxicating liquors within those parts of the proposed State then known as the Indian Territory and the Osage Reservation and within any other parts of the proposed State which existed as an Indian reservation on the first day of January, 1906, should be prohibited for twenty-one years from the date of the admission of the State into the Union, and that in said act no reservation or exception was made whereby any one of the defendants might import into the said named portion of said State or in any other manner furnish any intoxicating liquors whatsoever, and the power to regulate interstate commerce in intoxicating liquor was thereby surrendered to the State of Oklahoma as to said portions of said State; and by the said act it was not provided that intoxicating liquor should be furnished to any person in what was formerly the Indian Territory, including the Osage Reservation and any other parts of the State which existed as Indian reservations on the first day of January, 1906, in the manner and form that the same is now furnished and imported by said defendants, as hereinafter more fully set forth, or in any other manner or form."

The bill also alleged that, by ordinance irrevocable, Oklahoma had accepted the terms and conditions of the act of June 16, 1906, including the provision relating to intoxicating liquors; and thereby the State was obligated in place of the United States, so far as the power was lodged in it, to carry out the treaties and agreements made with the said Indian tribes against the introduction, sale, or in any manner the furnishing of intoxicating liquors in what was formerly the Indian Territory; but that defendants, in violation of the law and the rights of said Indian tribes therein, and to the injury of the State of Oklahoma and its inhabitants have, since November 16, 1867, and up to this time, continuously violated all said provisions against furnishing, carrying and conveying beer, ale,

wine and intoxicating liquors into Indian Territory; that such violation of law deeply injures and irreparably destroys the good citizenship and property of the State and its inhabitants, and the defendants threaten to continue the same unless restrained; and that in continuing so to do, the defendants and each of them have committed acts that amount to the surrender and abandonment of their corporate right to be engaged and doing business in inter-- state commerce between the States, and against such acts the plaintiff has no adequate remedy according to the course of the common law.

The State also complains that various persons, about two hundred in number, within its limits (the names of such persons being all set forth in a list made part of the bill) have made payment of the special tax required of liquor dealers under the laws of the United States; that by the above act of Congress of June 16, 1906, it was made a condition precedent to the admission of Oklahoma into the Union that "in its constitution it should provide that the payment of the special tax required of liquor dealers by the United States, of any person within those parts of the proposed State then known as the Indian Territory and the Osage Reservation, and within any other parts of said proposed State which existed as Indian reservations on the first day of January, 1906, should constitute *prima facie* evidence of the intention of such persons to violate that provision of the act of June 16, 1906, in reference to the prohibition of the manufacture, sale, barter, giving away, or otherwise furnishing intoxicating liquors which it was provided as a condition precedent that the constitution of said proposed State should provide for."

The bill further shows that the State, through its Constitutional Convention, submitted to the popular vote the question of adopting a provision prohibiting the manufacture, barter, sale, giving away or otherwise furnishing

intoxicating liquors in the State, and the result was the approval by the electors of a constitutional provision of that kind which has been in force since November 16, 1907; that pursuant to that constitutional provision the legislature of the State, on March 24, 1908, Okla. Laws, 1907–8, p. 594, passed a general statute, establishing a state agency and local agencies for the sale of intoxicating liquors for certain purposes and prohibiting the manufacture, sale, barter, giving away or otherwise furnishing intoxicating liquors, except as provided in the act; that by the terms of said act (Art. 3, § 2) it was provided that "the payment of the special tax required of liquor dealers by the United States by any person within this State, except the local agents of said State by said act, should constitute *prima facie* evidence of an intention to violate the provisions of said act;" and that the defendants, each and all of them, had due notice in writing from the State, by its constituted authorities, of the provisions of the act of Congress, and of the constitution and laws of Oklahoma, referred to herein.

It should be here stated that the above Oklahoma statute of March 24, 1908, prescribed various penalties of fine and imprisonment for violations of its provisions.

The bill finally alleges that the State of Oklahoma gave to each of the defendants due notice that it would hold all shipments made by each of them "whereby either of them undertook to receive at points without the State of Oklahoma intoxicating liquors of any kind, and to transport, carry or otherwise convey such liquors or compounds to or to the order of any of the persons, companies, corporations, firms or associations named in said list, as illegal, contrary to good morals, against the public policy and in direct violation of the positive laws of the State of Oklahoma; that the importation of any prohibited intoxicating liquors to or to the order of any of said persons by either or any of said defendants was and is a public nui-

sance within the State of Oklahoma, and were not importations in good faith, intended for the use of the importer and consignee, and not for sale within the State; that all shipments or deliveries made by defendants by interstate shipment to any or all of the persons named in said list were intended for and were for the violation of the laws of the State of Oklahoma and to commit a public nuisance in said State; that the State of Oklahoma thereby was not undertaking to object or restrict the defendants in the importation of intoxicating liquors, by interstate shipment to any person in said State outside of what was formerly the Indian Territory, the Osage Indian Reservation and an Indian Reservation, January 1, 1906, intending it for his own use and not for sale in said State, but that under the law of said State each and all of said persons intended to use all the liquor in their possession to sell the same in said State in violation of its laws, and that any delivery of prohibited intoxicating liquors to any of said persons would have the necessary effect of aiding such consignee to violate the laws of the State of Oklahoma and would be a public nuisance and injury to the said State."

That in addition thereto under the terms of said Chapter 69 of the Session Laws of 1907–1908, of Oklahoma, as therein provided, the State of Oklahoma, for the benefit of its citizens, undertook to furnish intoxicating liquor to all persons in said State wherever a sale of the same was by the law authorized, for reason of necessary use of the same for preservation, or health, or like purposes, and that under the laws of the State of Oklahoma, the State of Oklahoma was the sole and only person authorized to sell liquors in said State; that the State is pecuniarily interested in the sale of said liquors and irreparably injured by said importation by defendants to the persons named in said list who had paid the special tax required by the United States of liquor dealers, in that the said importa-

tion to the said persons named on said list, being for the purpose of a resale of such importations in said State, operated to the injury to the exclusive right to the sale of intoxicating liquors in said State claimed and exercised by the State of Oklahoma.

That since the sixteenth of November, 1907, after the said notices were received by the said defendants and up to this time, the said defendants have continuously and continually, each and all of them, imported to and to the order of each firm and all of the persons named in said list as having paid a special tax as required by the United States of liquor dealers. And the said persons named in said lists have continued continuously to resell said intoxicating liquors so imported by the defendants; that the said resale has at all times been in violation of the laws of the State of Oklahoma and has been a cause of enormous expense and irreparable injury to the State of Oklahoma and the inhabitants thereof, and each and all of the counties and other municipalities therein, in that the enenforcement of the laws against the sale of intoxicating liquors is extremely difficult, expensive and exhaustive, and that the importation and furnishing to said persons named in said list by said defendants of such intoxicating liquors with the intent that the same shall be used for resale in the said State has caused a large imposition of expenses upon said State and a violation of its laws and a constant source of friction and corruption in its government and is against the peace and dignity of the government of said State, and totally against the public policy thereof and good morals therein, and is a public nuisance in said State; that the defendants in violation of law and in injury to the rights of the State and inhabitants thereof, have openly, persistently and continuously imported intoxicating liquors, whose manufacture, sale, barter, or furnishing is prohibited by the laws of the State of Oklahoma to each and all of the persons named in said list by

furnishing, carrying and conveying the same to and to the order of each and all of the said persons named in said list on divers and sundry occasions .continuously, and that defendants threaten to continue in the said violation unless restrained, and in continuing so to do said defendants, and each of them, have committed acts which amount to a surrender and an abandonment of their corporate right to do business in interstate commerce in the carriage of intoxicating liquors, and for the same the plaintiff has no adequate remedy according to the course of the common law for the reason that said shipments originate outside of the State."

The relief asked is that the defendants be severally enjoined and restrained from further introducing, conveying and furnishing intoxicating liquors, including ale, wine and beer *in any form, at any place, at any time, and in any manner* in the State within the limits of what was formerly. the Indian Territory, including the Osage Reservation, and other parts of the State that existed as Indian reservations on the first day of January, 1900; that the several defendants be further enjoined from carrying, conveying, delivering, and furnishing intoxicating liquors, including ale, wine and beer, in any form and in any place, at any time or in any manner, in the State to any or all of the persons named in the above list as being persons who have paid the special tax required by the United States of liquor dealers; and that in default of obedience to the order of injunction prayed for the corporate rights of the defendants to do a business in interstate commerce with persons in Oklahoma be forfeited.

Such is the case made by the bill, and we come now to consider the controlling questions presented by it.

It is manifest that the object of this suit by the State, is, by means of an injunction issued by this court, to prevent the defendant companies from violating the penal or criminal laws of Oklahoma. It is, therefore, in its essence

a suit to enforce those laws. But of such a suit this court cannot take original cognizance, although the suit is in form of a civil nature. The Constitution after enumerating, in the first clause of § 2 of Art. III, the cases, in law and equity, as well as the controversies, to which the judicial power of the United States shall extend, provides that "in all cases affecting ambassadors, other public ministers and consuls, and those in which a State shall be party, the Supreme Court shall have original jurisdiction"—in all the other cases enumerated in the Article, the court to have appellate jurisdiction, both as to law and facts, with such exceptions, and under such regulations as Congress shall make.

The words "in which a State shall be party," literally construed, would embrace original suits of a civil nature brought by a State in this court to enforce a judgment rendered for a violation of its penal or criminal laws. But it has been adjudged, upon full consideration, that that result was inadmissible under the Constitution. This will appear from an examination of the opinion and judgment in *Wisconsin* v. *Pelican Insurance Co.*, 127 U. S. 265, 267, 290, 293. That was an original action brought in this court by the State of Wisconsin against the Pelican Insurance Company of Louisiana to recover the amount of a judgment rendered in a Wisconsin court against that company for certain penalties incurred by it for violating the laws of that State relating to the business of fire insurance companies. The question was distinctly presented whether the *State* could invoke the original jurisdiction of this court, to enforce the collection of such judgment. It was argued in that case that the suit was simply an action of debt, founded upon a contract of record, to wit, a judgment, and was, therefore, to be regarded only as a civil suit, as distinguished from a criminal prosecution. But that view was overruled. The court said that notwithstanding the comprehensive words of

the Constitution, "the mere fact that a State is the plaintiff is not a conclusive test that the controversy is one in which this court is authorized to grant relief against another State or her citizens." After an examination of the authorities it was further said, the court, speaking by Mr. Justice Gray: "The rule that the courts of no country execute the penal laws of another applies not only to prosecutions and sentences for crimes and misdemeanors, but to all suits in favor of the State for the recovery of pecuniary penalties for any violation of statutes for the protection of its revenue or other municipal laws, and *to all judgments for such penalties.* If this were not so all that would be necessary to give ubiquitous effect to a penal law would be to put the claim for a penalty into the shape of a judgment, Wharton's Conflict of Laws, § 833; Westlake's International Law, 1st ed., § 388; Piggott on Foreign Judgments, 209, 210." Further: "From the first organization of the courts of the United States, nearly a century ago, it has always been assumed that the original jurisdiction of this court over controversies between a State and citizens of another State, or of a foreign country, does not extend to a suit by a State to recover penalties for a breach of her own municipal law. . . . The real nature of the case is not affected by the form provided by the law of the State for the punishment of the offense. It is immaterial whether, by the law of Wisconsin, the prosecution must be by indictment or by action, or whether, under that law, a judgment there obtained for the penalty might be enforced by execution, by *scire facias,* or by a new suit. In whatever form the State pursues her right to punish the offense against her sovereignty, every step of the proceeding tends to one end, the compelling the offender to pay a pecuniary fine by way of punishment for the offense. This court, therefore, cannot entertain an original action to compel the defendant to pay to the State of Wisconsin a sum of money in satisfac-

tion of the judgment for that fine. The original jurisdiction of this court is conferred by the Constitution, without limit of the amount in controversy, and Congress has never imposed (if, indeed, it could impose) any such limit. If this court has original jurisdiction of the present case, it must follow that any action upon a judgment obtained by a State in her own courts against a citizen of another State for the recovery of any sum of money, however small, by way of a fine for any offense, however petty, against her laws, could be brought in the first instance in the Supreme Court of the United States. That cannot have been the intention of the Convention in framing, or of the people in adopting, the Federal Constitution." The principles announced in *Wisconsin* v. *Pelican Ins. Co.*, *supra*, have been recognized in many subsequent cases. *Postal Tel. Cable Co.* v. *Alabama*, 155 U. S. 482, 487; *California* v. *Southern Pacific Co.*, 157 U. S. 229, 259; *Missouri* v. *Ill. & Chic. Dist.*, 180 U. S. 208, 232; *Minnesota* v. *Northern Securities Co.*, 184 U. S. 199, 234, 235; *Kansas* v. *Colorado*, 206 U. S. 46, 83.

Those principles must, in our opinion, determine the present case adversely to the State. Although the State does not ask for judgment against the defendant railroad company for the penalties prescribed by the Oklahoma statutes for violations of its provisions, she yet seeks the aid of this court to enforce a statute one of whose controlling objects is to impose punishment in order to effectuate a public policy touching a particular subject relating to the public welfare. The statute viewed as a whole is to be deemed a penal statute. The present suit, although in form one of a civil nature, is, in its essential character, one to enforce by injunction regulations prescribed by a State for violations of one of its penal statutes and is, therefore, one of which this court cannot take original cognizance at the instance of the State.

But there is another ground which is equally fatal to the

claim that this court may give the relief asked by an original suit brought by the State. In the provisions of the Constitution relating to the judicial power of the courts of the United States it is provided, as we have seen, that "in all cases affecting ambassadors and other public ministers and consuls, and in those in which a State shall be party, the Supreme Court shall have original jurisdiction." In *Oklahoma* v. *Atchison, Topeka and Santa Fe Railway Company, ante,* p. 277, it was held that a *State* could not invoke the original jurisdiction of the court, by suit on its behalf, where the primary purpose of the suit was to protect its citizens, *generally,* against the violation of its laws by the corporations or persons sued; that the above words, "those in which a State shall be party," were not to be so interpreted as to embrace suits of that kind. We need not repeat what was said in the other case. Without stopping to consider other questions discussed by learned counsel, we hold, for the reasons stated in the opinion in that case, as well as because this suit is, in its essence and mainly, one to enforce a penal statute of a State, that the bill must be dismissed for want of jurisdiction in this court.

*It is so ordered.*