12-4601-cv
Federative Republic of Brazil v. Fu

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2013

(Argued: September 26, 2013    Decided: March 24, 2014)

Docket No. 12-4601-cv

_____

UNITED STATES OF AMERICA,

*Interpleader Plaintiff,*

—v.—

THE FEDERATIVE REPUBLIC OF BRAZIL,

*Interpleader Defendant-Appellee,*

*and*

TAMMY FU AND ELEANOR FISHER, *as Liquidators of Trade and Commerce Bank,*

*Interpleader Defendants-Appellants.*[*]

_____

Before:
         RAGGI AND DRONEY, *Circuit Judges,* KEENAN, *District Judge.*[**]

_____

[*] The Clerk of Court is directed to amend the official caption as shown above.

[**] The Honorable John F. Keenan, of the United States District Court for the

In this interpleader action to determine competing claims to $6.8 million held by the United States, appellants challenge a grant of summary judgment in favor of the Federative Republic of Brazil ("Brazil"), whose claim to the monies derives from the criminal forfeiture judgment of a Brazilian court. Because we construe the "penal law rule" to preclude United States courts from directly or indirectly enforcing foreign criminal laws, we vacate the grant of summary judgment in favor of Brazil. Nevertheless, we recognize that 28 U.S.C. § 2467 creates an exception to the penal law rule and, because Brazil has represented that it intends to request, pursuant to its mutual legal assistance treaty with the United States, that the Attorney General file a § 2467 action to secure the interpleader monies for Brazil, we remand with instructions to the district court to afford Brazil and the Attorney General a reasonable period of time to do so before the district court conclusively decides which interpleader party, if any, is entitled to the funds at issue.

VACATED AND REMANDED.

---

Southern District of New York, sitting by designation.

WILLIAM T. REID, IV (Rachel S. Fleishman, Craig A. Boneau, Reid Collins & Tsai LLP, New York, New York; Chun T. Wright, Esq., Washington, D.C., *on the brief*), Reid Collins & Tsai LLP, New York, New York, *for Interpleader Defendants-Appellants*.

JOHN W. MOSCOW, Baker & Hostetler LLP, New York, New York, *for Interpleader Defendant-Appellee*.

REENA RAGGI, *Circuit Judge*:

The United States filed this interpleader action to resolve competing claims to more than $6.8 million seized from a bank account held by Kesten Development Corporation ("Kesten"), an entity incorporated in the British Virgin Islands. On this appeal, Tammy Fu and Eleanor Fisher, as Liquidators of Trade and Commerce Bank ("Liquidators"), a Cayman Islands bank, challenge the award of summary judgment entered on October 24, 2012, in the United States District Court for the Southern District of New York (Thomas P. Griesa, *Judge*), in favor of the Federative Republic of Brazil ("Brazil"). See United States v. Barry Fischer Law Firm, LLC, No. 10-Civ-7997, 2012 WL 5259214 (S.D.N.Y. Oct. 24, 2012). The district court concluded that a forfeiture judgment entered by a Brazilian court pursuant to Brazil's successful criminal prosecution of Kesten's former principals and owners took precedence over the Liquidators' Cayman Islands civil default judgment against Kesten. In so holding, the court rejected

3

the Liquidators' invocation of the "penal law rule," a common law principle whereby a sovereign—in this case, the United States—generally declines to enforce the criminal laws of another nation.

For the reasons explained in this opinion, we conclude that the penal law rule precludes awarding summary judgment in favor of Brazil based on a forfeiture judgment of that sovereign grounded in a violation of Brazil's penal laws. At the same time, however, we recognize that 28 U.S.C. § 2467—which permits the United States Attorney General, upon request of a foreign nation pursuant to a mutual forfeiture assistance treaty, to petition a United States court to enforce a foreign forfeiture judgment—is a statutory exception to the penal law rule. While no § 2467 request from Brazil is presently before the Attorney General, that nation's counsel advised this court at oral argument that, if the challenged summary judgment decision were vacated based on the penal law rule, Brazil would promptly file a § 2467 petition pursuant to the nations' mutual legal assistance treaty.

Accordingly, while we conclude that the penal law rule requires vacatur of summary judgment in favor of Brazil, we remand this case to the district court with instructions that it afford Brazil and the Attorney General a reasonable

4

period of time to satisfy § 2467's exception to that rule before reaching a final decision in this interpleader action.

## I.    Background

The background to this appeal is complex, involving criminal and civil litigation over 15 years in the courts of four countries: the United States, Brazil, the Cayman Islands, and the British Virgin Islands.

    A.    The United States' Seizure of the Funds at Issue and Its Own Unsuccessful Forfeiture Litigation

In January 1999, federal agents, acting pursuant to a warrant, seized approximately $6.8 million in purported drug proceeds from a bank account in Kesten's name at the New York branch of MTB Bank ("Venus Account").  In June 2000, the United States commenced a civil forfeiture action in the District of New Jersey pursuant to 18 U.S.C. §§ 981, 984, maintaining that the seized funds were proceeds of violations of United States money laundering laws.[1]  While the district court initially granted forfeiture, the Third Circuit vacated judgment and remanded, whereupon the district court granted Kesten's motion to dismiss,

---

[1] In the forfeiture complaint, it was alleged that Markos Glikas had laundered drug proceeds with the assistance of Kesten principal and Brazilian national Antonio Pires de Almeida ("Pires"), who funneled the money through various bank accounts, placing approximately $6.8 million of such proceeds in the Venus Account.

holding that the government had failed to demonstrate probable cause to think that the funds in the Venus Account were proceeds of unlawful conduct and ordered return of the monies to Kesten. See United States v. $8,221,877.16 in U.S. Currency, 148 F. Supp. 2d 427, 434 (D.N.J. 2001), vacated and remanded, 330 F.3d 141 (3d Cir. 2003); see id. Civ. No. 00-2667 (JWB), 2004 U.S. Dist. LEXIS 31706, at *18–*19 (D.N.J. July 7, 2004) (granting dismissal).[2]

### B. Brazil's Initial Effort To Restrain the Venus Account Funds

Meanwhile, Brazilian authorities were investigating Kesten principal Pires and his associates for money laundering, tax evasion, fraud, and other financial crimes violative of Brazilian penal law. In December 2004, on the basis of prosecutors' representations that Pires and his confederates used Kesten and other entities as shell companies to launder illicit proceeds, a Brazilian court issued a seizure warrant for the Venus Account. Soon thereafter, Brazil requested assistance from the United States in executing its warrants pursuant to the nations' mutual legal assistance treaty. See Treaty Between the Government of the United States of America and the Government of the Federative Republic

---

[2] The more than $8 million reflected in the caption of this forfeiture litigation includes approximately $1.3 million seized from another New York bank account established for the benefit of Kesten's parent corporation. Because the parties stipulate that only the Venus Account monies are here at issue, we do not discuss these other funds further in this opinion.

of Brazil on Mutual Legal Assistance in Criminal Matters, U.S.-Braz., Oct. 14, 1997, S. Treaty Doc. No. 105-42 (1998).

Upon receipt of Brazil's request, the Attorney General moved in the District of Columbia, pursuant to 28 U.S.C. § 2467, for a temporary restraining order on the funds in the Venus Account.[3]  On January 26, 2005, the district court granted the motion, finding that the United States had demonstrated a substantial probability that Brazil would succeed in its forfeiture action against Pires.

The restraining order apparently remained in effect until September 22, 2010, when the United States moved for, and the district court ordered, vacatur in light of In re: Any and All Funds or Other Assets, in Brown Bros. Harriman & Co. Account #8870792 in the Name of Tiger Eye Invs. Ltd. ("Tiger Eye"), 613 F.3d 1122 (D.C. Cir. 2010).  In that unrelated case, the Court of Appeals interpreted § 2467, as then in effect, to permit the issuance of temporary restraining orders "only after a foreign court has entered a forfeiture judgment."

---

[3] Title 28 U.S.C. § 2467 authorizes federal courts, upon the request of the Attorney General of the United States or his designee, to enforce the forfeiture or confiscation judgments of foreign nations that are parties to the United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances or with which the United States has a treaty or other formal international agreement providing for mutual forfeiture assistance.

Id. at 1124 (emphasis in original).  Because the Venus Account was restrained on the basis of a Brazilian warrant issued prior to the entry of any forfeiture judgment, the restraining order on the Venus Account could no longer stand consistent with Tiger Eye.[4]

C.      Liquidators' Litigation

Separate from the described proceedings, in 2006, the Liquidators commenced a Cayman Islands action against Arthur Anderson LLP, the former auditor of Trade and Commerce Bank ("TCB"), to recover funds purportedly misappropriated by TCB directors as part of a laundering scheme.  In October 2008, the Grand Court of the Cayman Islands dismissed the suit based on the doctrine of unclean hands, concluding that TCB had actively participated in its directors' fraud.

In August 2010, the Liquidators sued Kesten in the British Virgin Islands, alleging that TCB's directors had funneled over $15 million from the bank through Kesten in an attempt to launder the allegedly misappropriated funds.  When Kesten failed to appear in that action, the British Virgin Islands court

---

[4] In § 2 of the Preserving Foreign Criminal Assets for Forfeiture Act of 2010, Pub. L. No. 111-342, 124 Stat. 3607, Congress amended 28 U.S.C. § 2467 to permit district courts to issue restraining orders "at any time before or after the initiation of forfeiture proceedings by a foreign nation," 28 U.S.C. § 2467(d)(3)(A) (2012) (emphasis added), thereby abrogating Tiger Eye.

entered a default judgment in the amount of $15,936,369 in favor of the Liquidators.

The Liquidators sought to domesticate that default judgment in the United States by filing suit against Kesten in the bankruptcy court for the Southern District of New York. Once again, Kesten failed to appear, and on October 26, 2010, the bankruptcy court entered judgment in the full amount in favor of the Liquidators.

D.     Interpleader Action

On October 20, 2010—approximately one month after vacatur of the District of Columbia restraining order on the Venus Account, and approximately one week before the Liquidators domesticated their default judgment against Kesten—the United States filed the instant interpleader action pursuant to 28 U.S.C. § 1335. Acknowledging various parties' competing claims to the Venus Account funds seized more than a decade earlier, the United States asked the district court to determine to whom the money should be paid. With respect to claims by Brazil, the United States alleged that the criminal actions against Pires and his associates in that country were "near completion," and that once the Brazilian court "enters a forfeiture judgment against the funds, Brazil would

9

[again] ask the United States, pursuant to its treaty obligations, to enforce the forfeiture judgment." Interpleader Compl. ¶ 23, J.A. 64.

E. Brazilian Judgment

On February 17, 2012, the Sixth Specialized Federal Court of São Paulo ("São Paulo Court") entered a single judgment (1) convicting Pires of fraudulent mismanagement of a financial institution, (2) finding the funds in the Venus Account to represent the proceeds of Pires's scheme, and (3) ordering the Venus Account funds forfeited ("Brazilian Judgment"). On February 2, 2013, after both sides appealed, Pires died, prompting the Brazilian appellate court to extinguish his personal criminal liability.[5]

F. The Challenged Summary Judgment Award

In the interpleader action, Brazil and the Liquidators filed cross-motions for summary judgment. Brazil sought transfer of the funds in the Venus Account to the São Paulo Court for it to hold pending resolution of the appeal of the Brazilian Judgment. Brazil argued that its right to the Venus Account funds

---

[5] This court was advised of these events by letter from the Liquidators' counsel dated March 17, 2014. We express no opinion on what effect, if any, Pires's death or the recent Brazilian court order might have on Brazil's ability to enforce that portion of the Brazilian Judgment declaring the Venus Account funds forfeited. In this opinion, we decide only that the singular means by which Brazil can enforce a criminal forfeiture judgment of its courts in the United States is in a petition under 28 U.S.C. § 2467.

accrued when Pires committed his financial crime and, in any event, the Brazilian Judgment collaterally estops the Liquidators' claims. The Liquidators maintained that an award of summary judgment to Brazil would violate the penal law rule's prohibition on one sovereign enforcing another nation's criminal laws. They also contested Brazil's invocation of collateral estoppel, arguing that (1) neither the Liquidators nor Kesten was a party to the Brazilian criminal action, and (2) the Brazilian Judgment is not final as it is subject to de novo review on appeal.

The district court granted Brazil's summary judgment motion and denied that of the Liquidators. It concluded that there was no genuine dispute that Kesten was a shell company dominated by Pires and his criminal co-defendants, implying that the São Paulo Court's findings against those individuals could thus be imputed to the corporation that they controlled. See United States v. Barry Fischer Law Firm, LLC, 2012 WL 5259214, at *3. Therefrom, the district court concluded that collateral estoppel prevented the Liquidators, asserting Kesten's rights as its judgment-creditors, from challenging the São Paulo Court's determination that Brazil is entitled to the Venus Account funds. The court held that the penal law rule did not preclude judgment in favor of Brazil because it

11

was not "directly appl[ying] Brazilian law," and, therefore, its award would not "impinge upon Brazil's sovereignty" or "punish a party based upon a misapplication of foreign law."  Id. at *7.  The district court ordered the United States to transfer the funds seized from the Venus Account to the São Paulo Court, but stayed that order pending this appeal.

## II.     Discussion

"We review an award of summary judgment de novo, construing the evidence in the light most favorable to the non-moving party."  Lynch v. City of New York, 737 F.3d 150, 156 (2d Cir. 2013).  When we do that here, we conclude, as a matter of law, that the penal law rule did not permit the district court to grant summary judgment in favor of Brazil based on a criminal forfeiture judgment in the absence of a § 2467 petition by the Attorney General.  Accordingly, we vacate the award of summary judgment.

### A.     The Penal Law Rule

The "penal law rule" is an exception to the generally recognized principle of international comity that one nation affords recognition "within its territory to the legislative, executive, or judicial acts of another nation."  Hilton v. Guyot, 159 U.S. 113, 143 (1895); accord, e.g., Figueiredo Ferraz E Engenharia de Projecto

12

Ltda. v. Republic of Peru, 665 F.3d 384, 391 (2d Cir. 2011). The penal law rule was first invoked by the Supreme Court in The Antelope, 23 U.S. (10 Wheat.) 66 (1825), when Chief Justice Marshall categorically pronounced that "[t]he Courts of no country execute the penal laws of another," id. at 123. The rule derives from a corollary to the presumptive "equality of nations" that informs international law, i.e., that "no nation can prescribe a rule for others." Id. at 122. Recognizing the pronouncement of criminal rules to be a significant expression of national sovereignty, "the common law" had thus long understood "that acts were punished as crimes only by the state or nation whose laws were violated." Robert A. Leflar, Note, Extrastate Enforcement of Penal and Governmental Claims, 46 Harv. L. Rev. 193, 195 (1932).

Since The Antelope, the Supreme Court has continued to treat the penal law rule as an "incontrovertible maxim." Wisconsin v. Pelican Ins. Co., 127 U.S. 265, 290 (1888) (stating that penal laws of one sovereign "cannot be enforced by the courts of another country"), overruled in part on other grounds by Milwaukee Cnty. v. M.E. White Co., 296 U.S. 268, 278 (1935) (holding that Constitution's Full Faith and Credit Clause requires American states to recognize their respective tax judgments); see, e.g., Pasquantino v. United States, 544 U.S.

13

349, 360–61 (2005) (recognizing "rule against the enforcement of foreign penal statutes" announced in The Antelope); Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 413 (1964) (reciting "principle enunciated in federal and state cases that a court need not give effect to the penal or revenue laws of foreign countries or sister states"[6]); Oklahoma ex rel. West v. Gulf, Colo. & Santa Fe Ry. Co., 220 U.S. 290, 299 (1911) (identifying "rule that the courts of no country execute the penal laws of another" (internal quotation marks omitted)).

Our own court has followed suit, with Learned Hand expanding on the rule's rationale. Judge Hand explained the danger in requiring United States courts to "pass upon the provisions for the public order of another state," something that "is, or at any rate should be, beyond the powers of a court." Moore v. Mitchell, 30 F.2d 600, 604 (2d Cir. 1929) (L. Hand, J., concurring), aff'd on other grounds, 281 U.S. 18 (1930). Judge Hand further noted that enforcement of foreign criminal laws would enmesh courts in "the relations between the states themselves," a matter outside judicial competence and, in any event, "intrusted to other authorities" under our system of separation of powers. Id.;

---

[6] The "revenue rule," a corollary to the penal law rule, provides that "courts of one sovereign will not enforce final tax judgments or unadjudicated tax claims of other sovereigns." Attorney Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc., 268 F.3d 103, 109 (2d Cir. 2001); see also Pasquantino v. United States, 544 U.S. at 360–61 (describing revenue rule as corollary to penal law rule).

14

see also Oklahoma ex rel. West v. Gulf, Colo. & Santa Fe Ry. Co., 220 U.S. at 299 (holding that penal law rule "applies not only to prosecutions and sentences for crimes and misdemeanors, but to all suits in favor of the state for the recovery of pecuniary penalties for any violation of statutes for the protection of its revenue or other municipal laws, and to all judgments for such penalties" (emphasis removed) (internal quotation marks omitted)); Attorney Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc., 268 F.3d 103, 109–20 (2d Cir. 2001) (expounding upon justifications for revenue rule, including "respect for sovereignty, concern for judicial role and competence, and separation of powers").

While judicial recognition of the penal law rule has been long-standing, the rule's scope has sometimes required clarification. Thus, in Wisconsin v. Pelican Insurance Co., the Supreme Court explained that the penal law rule applied "not only to prosecutions and sentences for crimes and misdemeanors," but also to any proceeding "compelling the offender to pay a pecuniary fine by way of punishment" for a criminal offense. 127 U.S. at 290, 299. In Huntington v. Attrill, 146 U.S. 657 (1892), the Supreme Court explained further that a penal law is one where "the wrong sought to be redressed is a wrong to the public" rather

15

than "to the individual," that is, a law "punish[ing] an offense against the public justice of the state" as opposed to "afford[ing] a private remedy to a person injured by the wrongful act," id. at 668, 673–74; accord Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1219 (9th Cir. 2006) (en banc); see also Banco Nacional de Cuba v. Sabbatino, 376 U.S. at 413 n.15 (stating that for purposes of penal law rule, penal law "is one which seeks to redress a public rather than a private wrong").[7]

B.    Applying the Penal Law Rule to this Case

When we apply the principles just discussed to this case, we conclude that the penal law rule barred the district court from granting summary judgment in favor of Brazil and ordering transfer of the disputed funds to the São Paulo Court.

---

[7] We have similarly held the related revenue rule to apply to both direct and indirect enforcement efforts. See Attorney Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc., 268 F.3d at 131–32 (identifying direct enforcement effort where "Canada would have a United States court require defendants to reimburse Canada for its unpaid taxes" and indirect enforcement effort where Canada sought reimbursement of its law enforcement costs, which are "derivative of the taxes Canada sought to enforce"); cf. Pasquantino v. United States, 544 U.S. at 364 (stating that revenue rule is not implicated when United States enforces its own criminal laws because "prohibition on the enforcement of foreign penal law does not plainly prevent the Government from enforcing a domestic criminal law" (emphasis in original)).

16

The sole basis for the district court's decision, as Brazil itself concedes, was the Brazilian Judgment resulting from the Pires criminal prosecution. See Appellee's Br. 23 ("As a result of the [Pires defendants'] convictions, the São Paulo Court issued a judgment finding that the Venus Account Funds were derived from crimes committed against Brazil . . . ."). In that single judgment, the São Paulo Court not only found Pires and his co-defendants guilty of charged crimes and imposed incarceratory sentences, but also determined that monies in the Venus Account were forfeitable to Brazil pursuant to that country's Penal Code Art. 91(II)(b), because the funds "derived" from and, thus, "represent proceeds" of, proved violations of Brazil's penal laws. Brazilian J. ¶ 16.3, Supplemental App. 59. Thus, Brazil's request to transfer the funds seized from the Venus Account to its São Paulo Court is properly understood to seek enforcement of that country's penal laws in order to redress a public, and not simply a private, wrong. See Banco Nacional de Cuba v. Sabbatino, 376 U.S. at 413 n.15; Wisconsin v. Pelican Ins. Co., 127 U.S. at 290.

In urging otherwise, Brazil contends that the forfeiture judgment is more akin to a civil in rem award, not subject to the penal law rule. We are not persuaded.

17

First, for an action to be <u>in rem</u>, the property at issue generally must itself be located within the jurisdiction of the ordering court. <u>See</u> <u>Wisconsin v. Pelican Ins. Co.</u>, 127 U.S. at 291 (referencing <u>in rem</u> forfeiture awards respecting "specific property within [court's] jurisdiction"); <u>see generally</u> <u>United States v. James Daniel Good Real Prop.</u>, 510 U.S. 43, 57 (1993) (stating that "to institute and perfect proceedings <u>in rem</u>, . . . the thing should be actually or constructively within the reach of the Court" (internal quotation marks and alterations omitted)).  The funds seized from the Venus Account were not located within the jurisdiction of the São Paulo Court at the time of the forfeiture judgment at issue; rather, the funds were within the jurisdiction of the United States.  Thus, it is by no means clear that the forfeiture provision of the Brazilian Judgment can reasonably be viewed as an <u>in rem</u> award.

Second, and in any event, courts have long recognized that, for purposes of the penal law rule, "[w]hat matters is not the form of the action, but the substance of the claim."  <u>Attorney Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc.</u>, 268 F.3d at 120; <u>see</u> <u>Wisconsin v. Pelican Ins. Co.</u>, 127 U.S. at 290. Thus, at the same time the Supreme Court stated that a country's <u>in rem</u> forfeiture awards "will be recognized and upheld in the courts of any other

country in which the title to the property is brought in issue," it cautioned that "recognition of a vested title in property is quite different from the enforcement of a claim for a pecuniary penalty." Wisconsin v. Pelican Ins. Co., 127 U.S. at 291 (emphasis added); cf. Donnelly v. FAA, 411 F.3d 267, 270–71 (D.C. Cir. 2005) (upholding recognition of Japanese criminal conviction as evidence in domestic license-revocation proceeding). In this interpleader action, Brazil does not ask the district court simply to recognize the existence of its forfeiture judgment; rather, Brazil seeks the district court's assistance in enforcing that judgment by transferring funds presently within the United States to Brazil.[8] In short, Brazil asks the United States to surrender its own in rem jurisdiction over the Venus Account to Brazil, an essential step in the enforcement of that country's forfeiture judgment and the penal laws that inform it. See Attorney Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc., 268 F.3d at 130–32 (recognizing that revenue and penal law rules bar claims for indirect as well as direct enforcement).

---

[8] The distinction between recognizing and enforcing foreign penal judgments is widely recognized, as demonstrated by our citation to Regazzoni v. K.C. Sethia (1944) Ltd., [1956] 2 Q.B. 490, 515–16 (C.A.), aff'd, [1957] 3 All E.R. 287 (H.L.), in Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc., 268 F.3d at 133 n.42. In K.C. Sethia, Lord Denning explained that while "courts will not enforce [revenue or penal] laws at the instance of a foreign country[, i]t is quite another matter to say that we will take no notice of them. It seems to me that we should take notice of the laws of a friendly country, even if they are revenue laws or penal laws." [1956] 2 Q.B. at 515.

United States v. Ursery, 518 U.S. 267 (1996), upon which Brazil relies, is not to the contrary. There, the Supreme Court held that the Double Jeopardy Clause of the United States Constitution does not bar law enforcement officials of this country from pursuing a civil in rem forfeiture proceeding after a criminal prosecution because such an in rem proceeding is not a second punishment of the individual defendant for purposes of double jeopardy. See id. at 287–88. The Supreme Court had no occasion in Ursery to consider, much less decide, whether a foreign forfeiture judgment is nevertheless "penal" for purposes of the penal law rule. Nor did it have occasion to consider that question where, as here, forfeiture did not follow conviction but, rather, was decided with conviction in a single criminal proceeding and pronounced in a single criminal judgment.

Nevertheless, Ursery does lend some support to application of the penal law rule in this case by reiterating a point made over sixty years earlier in Various Items of Personal Property v. United States, 282 U.S. 577 (1931), i.e., an in rem forfeiture proceeding does enforce penal laws, but it does so against property rather than persons. "'It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient.'" United States v. Ursery, 518 U.S.

20

at 275 (quoting Various Items of Personal Prop. v. United States, 282 U.S. at 581).

The penal law rule is not concerned with this distinction between property and persons. Its focus is the infringement on sovereignty that occurs when one country seeks to "punish an offense against the public justice of [another] state." Huntington v. Attrill, 146 U.S. at 674. That concern is as present in the Brazilian Judgment's enforcement of the nation's penal laws against property as against persons. Thus, we conclude that the penal law rule applies to Brazil's efforts to seek United States enforcement of its forfeiture judgment by transferring the funds at issue from the United States to Brazil.

Brazil asserts that the penal law rule should not apply where, as here, it is an interpleader defendant in a suit initiated by the United States, with which it has a mutual legal assistance treaty. To the extent Brazil thus suggests that the United States' commencement of an interpleader action somehow evinces the executive branch's recognition of Brazil's entitlement to the Venus Account funds, we are not persuaded. An interpleader suit, by its very nature, identifies various possible claimants to the funds at issue, but leaves it to the court to decide which, if any, have a valid claim. Indeed, to construe the United States' commencement of this interpleader action as Brazil urges would be to sanction

21

bypassing the procedure set forth in 28 U.S.C. § 2467, which, as we explain below, is a statutory exception to the penal law rule created by Congress for enforcing foreign forfeiture judgments. This we decline to do. See generally Attorney Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc., 268 F.3d at 124 (observing, in case involving revenue rule, that tax treaty between Canada and United States "confirms that Canada has other, more appropriate, avenues" by which to pursue claims).

At the same time that we conclude that the penal law rule requires us to vacate the district court's award of summary judgment in favor of Brazil, we recognize that Brazil might satisfy the requirements of a § 2467 exception, a possibility we discuss in the next section of this opinion to explain our instructions on remand.

C. 28 U.S.C. § 2467: The Statutory Exception to the Penal Law Rule

A common law principle, such as the penal law rule, may be abrogated by statute, provided the statute speaks directly to the point addressed by the common law. See United States v. Texas, 507 U.S. 529, 534 (1993) (stating that statutes that invade common law must be read with presumption favoring retention of long-established, familiar principles, "except when a statutory

22

purpose to the contrary is evident" (internal quotation marks omitted)); Rosado v. Civiletti, 621 F.2d 1179, 1192 (2d Cir. 1980) ("[N]othing in the doctrine enunciated by [Chief Justice] Marshall [in The Antelope] precludes a sovereign power from extending recognition to another's penal laws where it chooses to do so."). Title 28 U.S.C. § 2467 "speaks directly" to the question addressed by the penal law rule, i.e., courts' ability to enforce a foreign nation's penal laws. The statute expressly authorizes a United States district court, subject to the requirements set forth in § 2467, to enforce a "foreign forfeiture or confiscation judgment," defined to include judgments compelling the payment of proceeds from foreign crimes. 28 U.S.C. § 2467(a)(2), (c).

Moreover, § 2467 grants such authority subject to conditions that alleviate various concerns informing judicial adherence to the penal law rule. See Moore v. Mitchell, 30 F.2d at 604 (L. Hand, J., concurring); accord Attorney Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc., 268 F.3d at 111–19. Specifically, by limiting courts' enforcement authority to nations that are subject to certain international agreements or treaties and that satisfy certain statutory conditions, § 2467 reserves to the legislature and the executive, the branches of government entrusted with foreign policy responsibility, the sovereign task of identifying

those countries whose criminal laws the United States will consider enforcing. Further, by vesting sole discretion in the Attorney General to decide which particular foreign enforcement petitions to pursue, § 2467 ensures that the executive alone will weigh the foreign affairs implications of any enforcement action. See 28 U.S.C. § 2467(b)(2) (mandating that Attorney General's decision as to "whether, in the interest of justice, to certify the request [for enforcement of a foreign forfeiture judgment] . . . shall be final and not subject to either judicial review or review under [the Administrative Procedure Act]"). Moreover, if the Attorney General initiates an enforcement action, § 2467 cabins the judiciary's enforcement discretion by directing that district courts "shall" grant enforcement of a foreign judgment unless jurisdiction or due process concerns are evident, matters falling comfortably within the sphere of judicial competence to assess. See id. § 2467(d)(1).[9]

---

[9] The jurisdictional and due process concerns are as follows:

(A) the judgment was rendered under a system that provides tribunals or procedures incompatible with the requirements of due process of law;

(B) the foreign court lacked personal jurisdiction over the defendant;

(C) the foreign court lacked jurisdiction over the subject matter;

Thus, we construe § 2467 to establish a statutory exception to the penal law rule for foreign judgments falling within its terms.

At oral argument, counsel for Brazil represented that, if this court were to vacate the award of summary judgment in its favor based on the penal law rule, it would promptly petition the United States to initiate a § 2467 proceeding. There is no reason to doubt the representation; Brazil petitioned for § 2467 assistance with respect to the Venus Account in 2005, see supra at 6–7, and has done so in other proceedings, see, e.g., In re Seizure of Approximately $12,116,153.16 and Accrued Interest in U.S. Currency, 903 F. Supp. 2d 19 (D.D.C. 2012). Thus, we remand this case to the district court with instructions that it afford Brazil a reasonable period of time to request and the Attorney General a reasonable period of time to file a § 2467 enforcement action. If Brazil fails, or if the Attorney General declines, to do so, the district court shall then determine, in

---

(D) the foreign nation did not take steps, in accordance with the principles of due process, to give notice of the proceedings to a person with an interest in the property . . . in sufficient time to enable him or her to defend; or

(E) the judgment was obtained by fraud.

28 U.S.C. § 2467(d)(1).

light of our decision today, whether any interpleader party is entitled to the funds seized from the Venus Account.

Our decision to vacate and remand makes it unnecessary for us now to decide other disputes between the parties, specifically, (1) whether the Liquidators are collaterally estopped from asserting an interest in the Venus Account by virtue of the forfeiture determination in the Brazilian Judgment, and (2) the priority of the Brazilian Judgment as compared to the British Virgin Islands default judgment procured by the Liquidators. These matters may well be further informed by § 2467 proceedings, both at the Attorney General review stage and, if a proceeding is initiated, upon district court review of jurisdiction and due process. Thus, nothing in this opinion should be construed to limit the parties on remand from pursuing these matters and any others that may be relevant.

III. **Conclusion**

To summarize, we conclude as follows:

1. Insofar as a forfeiture judgment in favor of a sovereign determines guilt and imposes condemnation—albeit against property rather than persons— based on violations of a nation's criminal laws, it is properly viewed as enforcing

26

those criminal laws and, thus, constitutes a penal judgment for purposes of the penal law rule.

2. Brazil's claim to the disputed interpleader funds in this case is based on a criminal judgment of one of its courts that, in addition to adjudicating individual guilt, ordered forfeiture of the disputed funds to Brazil as proceeds of proved violations of its penal laws. In such circumstances, the district court's order transferring the disputed funds from the United States to the Brazilian court enforces Brazilian penal laws in a way proscribed by the penal law rule and must be vacated.

3. Title 28 U.S.C. § 2467 creates a statutory exception to the penal law rule insofar as it permits the Attorney General of the United States, in his sole discretion, to petition district courts to enforce the forfeiture judgments or confiscation orders of qualifying foreign nations. Because Brazil represented to this court that, if the summary judgment award were vacated based on the penal law rule, it would promptly make a § 2467 request to the Attorney General, we instruct the district court on remand to afford Brazil a reasonable opportunity to do so. If Brazil fails to do so, or if the Attorney General declines to file a § 2467 petition on behalf of Brazil, the district court shall proceed to determine, in light

of today's decision, whether any party is entitled to the disputed interpleader funds.

The award of summary judgment in favor of Brazil is VACATED and the case is REMANDED for further proceedings consistent with this opinion.